WASTE MANAGEMENT OF CAROLINAS, INC., T/D/B/A TRASH REMOVAL SERVICE, INC. v. PEERLESS INSURANCE COMPANY AND PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY

No. 845SC97

(Filed 28 December 1984)

1. **Insurance § 149— potential liability—duty to defend**

In an action to determine whether an insurance company has a duty to defend a claim where the allegations against the insured are broad and uncertain as to specific facts, the insured has a right to a defense whenever the allegations show potential liability within the insurance coverage, and there are no allegations which would *necessarily* exclude coverage.

2. **Insurance § 149— liability for groundwater contamination—insurers' duty to defend—ambiguities interpreted in favor of insured**

In an action to determine whether two insurance companies are obligated to defend a waste collection and transportation service in an action arising

Waste Management of Carolinas, Inc. v. Peerless Ins. Co.

from groundwater contamination, summary judgment should not have been granted for the insurance companies where there was a potential that liability within the policy language would be established at trial when ambiguities in the complaint and the policies concerning "occurrences," pollution exclusions, and "contributing" to groundwater contamination are resolved in favor of the insured.

3. **Insurance § 149— liability for improper waste disposal—duty to defend—summary judgment for insurance company improper**

In an action to determine whether insurance companies had a duty to defend a waste disposal company in an action for groundwater contamination, summary judgment for the insurance companies was not proper where the complaint suggested that the insured was careless and negligent in disposing of the chemicals. There was a potential that the insured could be found to have accidentally disposed of toxic chemicals without any intent or expectation that they would contaminate groundwater and would therefore fall within an "occurrence" under the policy.

4. **Insurance § 149— groundwater contamination—cleanup costs—covered by general liability insurance**

In an action arising from groundwater contamination at a landfill in which the complaint sought a broad injunction preventing further harm, requiring that residents be compensated with alternative supplies, and requiring that the aquifer be cleaned up, the cleanup costs were essentially compensatory damages for injury to common property which would be covered by general liability insurance policies.

5. **Insurance § 100.1— groundwater contamination—actions against waste transportation company—defense not required under automobile policies**

In an action to determine whether insurance companies must defend an action against a waste collection and transportation company for groundwater contamination at a landfill, the allegations in the complaint against plaintiff did not establish a causal connection sufficient for coverage under automobile insurance policies. Summary judgment was properly granted for defendant insurers.

APPEAL by plaintiff from *Fountain, Judge.* Judgment entered 19 September 1983 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 23 October 1984.

The plaintiff in this case, Trash Removal Service (TRS), operates a waste collection and transportation service for residential, commercial and industrial customers. From August 1973 to June 1979, it trucked solid waste in "Dempsey Dumpsters," or "Dempsters," to the Flemington Landfill, located in New Hanover County.

On 11 January 1980, the Flemington Landfill became the subject of a suit brought by the United States against the owners and operators of the Landfill: *United States v. Waste Industries, Inc., et al.*, 80-4-CIV-7 (E.D.N.C.). The suit was based on Section 7003 of the Resource Conservation and Recovery Act, 42 U.S.C. 6973. The plaintiff United States requested injunctive relief for and reimbursement of costs arising out of groundwater contamination allegedly caused by the Flemington Landfill. The United States alleged that toxic chemicals, including benzene, tetrachloroethylene, trichloroethylene, vinyl chloride and methylene chloride, migrated from the Landfill into the aquifer and have been detected in residential wells at levels sufficient to endanger human health and the environment.

The owners and operators of the Landfill have in turn filed third party complaints against TRS, seeking indemnity or contribution in the event they are found liable under Section 7003. Their complaints allege that TRS "contributed" to the contamination of groundwater in New Hanover County and was "careless and negligent" in not exercising proper care to prevent the deposit of hazardous chemical wastes when delivering solid wastes.

From 12 August 1974 through 12 August 1979, defendant Peerless Insurance Company (Peerless) insured plaintiff under a Manufacturers' and Contractors' Liability Insurance policy. From 17 June 1979 through 17 June 1980, defendant Pennsylvania National Mutual Casualty Insurance Company (Penn) insured plaintiff under a policy of Comprehensive General Liability Insurance. TRS also obtained automobile liability policies for its trash handling vehicles from the same defendants.

On receiving the third party complaints against it, TRS tendered coverage to Peerless and Penn. Peerless denied that any coverage was due under its policies, and Penn declined to undertake TRS's defense and disclaimed any obligation.

On 7 June 1982, TRS filed a complaint seeking a declaratory judgment against Peerless and Penn, determining its rights pursuant to both the general liability and the automobile liability policies. Peerless and Penn moved for summary judgment against TRS, which was granted. The trial court also denied TRS's motion for summary judgment. The trial judge found no just reason to

delay our review of its decision, and TRS has accordingly appealed.

*Burney, Burney, Barefoot, Bain & Crouch, by Auley M. Crouch, III, for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, by Walter E. Brock, Jr., for defendant appellee Pennsylvania National Mutual Casualty Insurance Company; and Prickett & Corpening, by Carlton S. Prickett, Jr., for defendant appellee Peerless Insurance Company.*

ARNOLD, Judge.

The primary question presented by this appeal is whether the insurance policies issued by defendants Peerless Insurance Company (Peerless) and Pennsylvania National Mutual Casualty Insurance Company (Penn) oblige them to defend plaintiff, Trash Removal Service (TRS), against certain third party suits brought against it by the owners and operators of the Flemington Landfill. The owners and operators are presently the defendants in a civil action brought by the United States, based on Section 7003 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6973. This action seeks to hold the owners and operators responsible for contamination of the aquifer underlying the landfill and to halt further contamination of the aquifer. In turn, the owners and operators have brought third party suits seeking indemnification and contribution from TRS and other transporters of waste materials to the landfill. Those suits caused TRS to request assistance from its insurers, Peerless and Penn, which they denied, triggering the present declaratory judgment action.

Both insurers, Penn and Peerless, have denied any duty to defend TRS, arising out of the various insurance policies. Penn has asserted an affirmative defense based on the "pollution exclusion" contained in its general liability policy. Both insurers moved for summary judgment, and stipulated for purposes of the motions, that with respect to the policy definition of "occurrence," "the insured neither expected nor intended the resulting claimed damage." TRS also moved for summary judgment. After considering "all pleadings and matters of record, and having heard the arguments of counsel," the trial judge rendered summary judgment for defendants Penn and Peerless.

In reviewing an order of summary judgment, we must determine whether there is no genuine issue of material fact and whether judgment was appropriate as a matter of law. *Vassey v. Burch*, 301 N.C. 68, 72, 269 S.E. 2d 137, 140 (1980). In this case we are concerned with the meaning of language used in the defendants' policies of insurance. This is a question of law, *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E. 2d 518, 522 (1970), and if the policy language as applied to the facts shows without contradiction that defendants have no duty to defend, then summary judgment was properly granted.

[1] In determining whether there is a duty to defend, the trial court is largely restricted to facts as alleged in the third party complaints. An insurance company has a duty to defend its insured against a suit brought by a third party claimant, even though the suit may be groundless, if in such suit the third party claimant alleged facts which, if true, imposed upon the insured a liability to the claimant within the coverage of the insured's policy. *Fireman's Fund Insurance Co. v. North Carolina Farm Bureau Mutual Insurance Co.*, 269 N.C. 358, 361-62, 152 S.E. 2d 513, 517 (1967). The court must then compare the complaint with the policy to see whether the allegations describe facts which appear to fall within the insurance coverage. The trial court generally must avoid going beyond the pleadings to ascertain the facts as they actually are, which determine ultimate liability.

Given the plasticity of modern notice pleading, however, the "comparison test," is often difficult to apply, especially in cases like the present, where the plaintiff has initiated the action apparently without knowledge of significant facts. This problem of inadequate pleadings does not appear to have been addressed in North Carolina law. Yet, the dominant rule in other jurisdictions is that where the allegations in the complaint are broad, and uncertain as to specific facts, "the insured has a right to a defense whenever the allegations show a *potential* that liability will be established within the insurance coverage," *Travelers Indem. Co. v. Dingwell*, 414 A. 2d 220, 226 (Me. 1980) (emphasis added), and the complaint contains "no allegation of facts which would *necessarily* exclude coverage," *Dingwell*, 414 A. 2d at 227 (emphasis added). As Chief Judge Learned Hand wrote in the case *Lee v. Aetna Casualty & Surety Co.*, 178 F. 2d 750 (2d Cir. 1949):

Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; *but it seems to us that we should resolve the doubt in favor of the insured.* . . . When . . . the complaint comprehends an injury which *may* be within the policy, we hold that the promise to defend includes it.

*Lee,* 178 F. 2d at 752-53 (emphasis added).

We believe that this is the correct rule and that it is consistent with, and, as Chief Judge Hand has implied, is founded upon, a principle of insurance law that runs strong in North Carolina: that doubts or ambiguities should be resolved in favor of the insured, *see Trust Co. v. Insurance Co.,* 276 N.C. 348, 354, 172 S.E. 2d 518, 522 (1970).

A specific application of this rule is that where a complaint contains multiple theories of recovery, some covered by the policy and others excluded by it, the insurer still has a duty to defend. *See Travelers Indem. Co. v. Dingwell,* 414 A. 2d 220 (Me. 1980).

[2] We now turn to the insurance policies issued to TRS by the defendants in the present suit. From 12 August 1974 through 12 August 1979, Peerless insured plaintiff under a Manufacturers' and Contractors' Liability Insurance policy. From 17 June 1979 through 17 June 1980, Penn insured plaintiff under a policy of Comprehensive General Liability Insurance. TRS also obtained automobile liability policies for its trash handling vehicles from the same defendants. From 1973 to 1979, when the Landfill was closed, TRS hauled solid waste materials to the Landfill. The parties apparently have not argued before us the issue of whether the insurance policies were in effect during the time that the critical events allegedly insured against took place. Given the facts as presented in the various complaints, we assume that the policies were in effect, although recognizing that when the merits of the federal action are heard, and after more particular factual determinations are made, the issue of timing may figure in deciding whether the policies in fact covered TRS's conduct and whether the insurance companies are liable to TRS.

We deal first with the Manufacturers' and Contractors' Liability Policy and the Comprehensive General Liability Policy, whose pertinent provisions are identical. Both policies provide:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A. bodily injury or
>
> Coverage B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . .

The insurance companies must therefore defend any suit seeking damages on account of bodily injury or property damage caused by an "occurrence." "Occurrence" is defined as:

> An accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Both policies also contain a "pollution exclusion":

> This insurance does not apply . . . (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

We deal first with the meaning of "occurrence." The policies say that an "occurrence" is an "accident" and that the term "accident" includes "continuous or repeated exposure to conditions." The word "accident," although not defined in the policies, has generally been held by courts to mean "that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen." *City of Wilmington v. Pigott*, 64 N.C. App. 587, 589, 307 S.E. 2d 857, 859 (1983), *citing* 43

Am. Jur. 2d, Insurance, § 559; *Skillman v. Insurance Co.*, 258 N.C. 1, 7, 127 S.E. 2d 789, 793 (1962).

The second half of the policies' definition of "occurrence" very nearly restates the common law definition of "accident." Our understanding of the history of the "occurrence" definition in the Comprehensive General Liability model policies is that the latter half of the definition was added to broaden and clarify the meaning of "accident," which some courts had taken to mean only an event happening suddenly and violently. *See* 7A Appleman, Insurance Law and Practice § 4492 (1979). We construe the latter half of the definition as clarifying the meaning of "accident" by stressing that what determines whether an accident has occurred are intent and expectation of bodily injury and property damage, and by adding the idea that whether the event is unexpected or unintended should be determined "from the standpoint of the insured." *See Edwards v. Akion*, 52 N.C. App. 688, 691-92, 279 S.E. 2d 894, 896 (1981) (intentional acts committed by employees of City covered by policy held by City because City did not expect or intend the acts), *aff'd per curiam*, 304 N.C. 585, 284 S.E. 2d 518 (1981).

Thus, in view of the "comparison test" described above and the definition of "occurrence," the question we must answer on examining the complaints is whether the facts alleged suggest a potential that an accident occurred and do not suggest conclusively that the insured actually foresaw or intended that its activity would result in bodily injury or property damage. We stress that our examination of intent or expectation should be a subjective one, from the standpoint of the insured, and not an objective one asking whether the insured "should have" expected the resulting damage.

We now turn to the pollution exclusion clause. The insurers argue that even if the coverage provisions apply to TRS, coverage was properly denied because of the pollution exclusion clause. The clause says that the insurance does not apply to bodily injury or property damage resulting from discharge of waste materials on land or water *unless* "such discharge, dispersal, release or escape is sudden and accidental." The trial court apparently agreed with the insurers, in particular, Penn, that this exclusion prevents the insurers from having a duty to defend. We disagree.

Construction of the polluters exclusion clause appears to be a question of first impression in this state. Overwhelming authority in other jurisdictions suggests that the clause is ambiguous, and that it should be construed consistently with the definition of "occurrence." *See Buckeye Union Ins. Co. v. Liberty Solvents and Chemicals Co., Inc.*, No. 11598, slip op. (C.A. Ohio July 11, 1984) and *Jackson Township Municipal Utilities Authority v. Hartford Accident & Indemnity Co.*, 186 N.J. Super. 156, 451 A. 2d 990 (1982) and cases cited therein.

The exclusion hinges on the words "sudden and accidental." The policies do not define these words, and some courts have observed that this may be enough to create ambiguity in the exclusion. *See Buckeye Union Ins. Co. v. Liberty Solvents and Chemicals Co., Inc.*, No. 11598, slip op. (C.A. Ohio July 11, 1984). Yet, there is further ambiguity in that the pollution exclusion and the definition of occurrence can conflict. The word "sudden," in the pollution exclusion, means happening without previous notice or on very brief notice; unforeseen; unexpected; unprepared for. Webster's New International Dictionary (2d ed. unabridged 1954); Black's Law Dictionary (4th ed. 1968). "Accidental" means, as noted above, happening unexpectedly or unintentionally, or by chance. Under the coverage provisions, if an event happens over a period of time, causing bodily injury or property damage unexpected or unintended from the standpoint of the insured, then it is an "occurrence," and the insurer should defend the insured in the event of suit based on it. Such an occurrence is clearly accidental, if the damage was not expected or intended from the standpoint of the insured. Yet, if the word "sudden" means *only* "an instantaneous happening," then the occurrence which happens over a period of time is subject to exclusion from coverage under the pollution exclusion.

In North Carolina, exclusions from coverage under insurance policies are strictly construed. *Stanback v. Westchester Fire Ins. Co.*, 68 N.C. App. 107, 114, 314 S.E. 2d 775, 779 (1984). When a policy defines coverage provisions so as to include a particular activity, but that activity is later excluded by an exclusion, then the policy is ambiguous, and the court is obliged to resolve the apparent conflict between coverage and exclusion in favor of the insured. *See id.* We find that the word "sudden" is reasonably susceptible of differing constructions and we construe it not to

mean just "instantaneous," but also "unforeseen" or "unexpected." This construction renders the pollution exclusion consistent with the definition of "occurrence" in the coverage provisions.

This construction has been widely accepted in other jurisdictions. As the court in *Jackson Township Municipal Utilities Authority v. Hartford Accident & Indemnity Co.*, 186 N.J. Super. 156, 451 A. 2d 990 (1982), noted: "the clause can be interpreted as simply a restatement of the definition of 'occurrence' — that is, that the policy will cover claims where the injury was 'neither expected nor intended.' It is a reaffirmation of the principle that coverage will not be provided for intended results of intentional acts but will be provided for the unintended results of an intentional act." 451 A. 2d at 994. *See also* 3 R. Long, The Law of Liability Insurance, App. 30, App. 58 and App. 68 (1936); *Molton, Allen and Williams, Inc. v. St. Paul F. & M. Ins.*, 347 So. 2d 95 (1977); *CPS Chemical Co., Inc. v. Continental Ins. Co.*, No. L039547-81, slip op. at 10-11 (N.J. Super. Aug. 8, 1984).

Thus, in applying the pollution exclusion to the alleged facts, if we find the contamination of the groundwater was "sudden and accidental," *i.e.*, unexpected and unforeseen from the standpoint of the insured, then the pollution exclusion does not preclude the insurers' duty to defend TRS.

We now examine the complaints at issue in this case to determine whether their allegations show a potential for liability within the insurance coverage and whether their allegations establish no set of facts which *necessarily* excludes coverage. We turn first to the federal Section 7003 complaint, because two of the third party complaints are patterned on it and attempt to pass on liability under it to TRS.

The federal complaint alleges that the owners and operators of the Flemington Landfill "contributed" to the disposal of wastes at the Landfill and to their escape into the groundwater beneath the Landfill. The term "contributed" comes from RCRA Section 7003. The term embraces both intentional and negligent activity resulting in danger to human health and the environment. *See United States v. Price*, 523 F. Supp. 1055, 1072-73 (D.N.J. 1981), *citing* S. Rep. No. 172, 96th Cong. 2d Sess. 5, reprinted in [1980] U.S. Code Cong. & Ad. News 8665, 8669. By using the term "contributing" in its complaint, the United States seeks to make the

owners and operators subject to the injunctive relief available under Section 7003, without having to make specific proof of their intent to contaminate the groundwater or of their negligent activity which caused the contamination of groundwater. The use of the term establishes a potential that the owners and operators were negligent, and does not necessarily mean that they were not negligent.

Before going further, we note that our interpretation of the term "contributing" does not transform this suit into one "arising under" federal law. This remains a suit concerned primarily with the construction of an insurance contract, a matter of state law. Our foray into the realm of RCRA common law is merely to show that for the drafters of the federal complaint the meaning of "contributing" is broad, encompassing both negligent and intentional conduct and excluding neither.

We now turn to the third party complaints which use the "contributing" language in allegations against TRS. Complaints filed by two groups of owners and operators, the New Hanover County Board of Commissioners, et al., and Waste Industries, Inc., and Waste Industries of New Hanover, Inc., allege that TRS hauled solid waste materials to the Flemington Landfill, represented that they were non-hazardous, and "contributed" to contamination of groundwater in the Flemington area and to the "imminent and substantial endangerment to health and to the environment" there. These two complaints seek contribution and indemnification from TRS if injunctive relief is granted against the owners and operators and if TRS is shown also to have "contributed" to the alleged contamination.

We find that these third party plaintiffs merely seek to pass on liability under RCRA Section 7003 to TRS. They use the term "contributing" in the same way as the United States did in the federal complaint. The term thus establishes a potential that at trial facts will be found that TRS's conduct was accidental and does not conclusively show that TRS expected or intended the resulting damage to Flemington groundwater. The fact that TRS intended to carry solid waste materials to the Landfill, which was its business, does not mean that it intended to contaminate the groundwater with toxic chemicals. Thus, construing ambiguities in these complaints and in the policies in favor of TRS, we find

that both create a potential that liability within the policy language will be established at trial. If TRS's waste transport business somehow "contributed" to groundwater contamination, then this is potentially an "occurrence" and the insurers accordingly have a duty under the general liability policies to defend TRS against these third party complaints.

[3] We turn next to the other third party complaint, brought by A. D. Royal et al. This complaint also alleges that TRS hauled solid waste materials to the landfill and represented that they were non-hazardous and non-contaminated, and that TRS "contributed" to the contamination of the groundwater supply. The Royal complaint, however, alleges in addition that TRS and other haulers were careless and negligent in not preventing solid and hazardous waste materials from being deposited at the landfill. The Royal complaint requests that if the groundwater has been contaminated, then the contributions, acts, omission, and negligence of TRS and other "Haulers" have caused the property of A. D. Royal et al. (the Landfill owners) to be permanently injured and damaged, and A. D. Royal et al. are entitled to "just and substantial compensation from 'Haulers' [including TRS] under general principles of law and equity," or in the alternative, an injunction should issue requiring TRS to provide a water supply for the Royal land and to restore the aquifer.

The Royal complaint thus alleges a set of facts that comes within the definition of "occurrence"; it suggests that TRS hauled waste materials to the landfill, but that TRS was careless and negligent in not preventing the disposal of waste materials that would contaminate the landfill and the groundwater. The Royal complaint's use of the theory of negligence and carelessness creates a potential that at trial TRS will be shown to have accidentally disposed toxic chemicals at the landfill, without any intent or expectation that they would contaminate the groundwater and landfill. Again, in determining duty to defend, we have examined the facts alleged to see whether from the standpoint of the insured, TRS, the contamination was unexpected and unintended. We have found no allegation of facts from which it necessarily follows that TRS intended or expected the groundwater contamination. Since our inquiry must be from the standpoint of the insured, we cannot say that because TRS deposited waste materials at the landfill it should have known that toxic

chemicals might be contained in the wastes and might seep into the groundwater. The third complaint thus also describes an "occurrence" which triggers the insurers' duty to defend.

Construing the pollution exclusion consistently with the definition of "occurrence," we find no allegation of facts in the third party complaints which shows that the contamination of the groundwater was not "sudden and accidental," *i.e.*, not expected nor intended from the standpoint of the insured. Indeed, the insurers have stipulated that "the insured [TRS] neither expected nor intended the resulting claimed damage." The pollution exclusion accordingly does not apply to any of the complaints.

We hold that both of the general liability policies as applied to the alleged facts oblige the defendant insurers, Penn and Peerless, to defend TRS in suits commenced by the three third party complaints. As to these policies, the trial judge's order of summary judgment against TRS is in error and should be reversed.

[4]    We address one additional issue, which the parties have not raised, but which has arisen in other cases concerning the clean-up of toxic wastes. This is the question of whether the policy language, "the company shall have the right and duty to defend any suit against the insured seeking *damages* on account of . . . bodily injury or property damage," means that the insurer is obliged only to defend when legal, monetary damages are requested, or whether it must also defend when a suit seeks the costs of complying with an injunction. *See* general discussion in K. Rosenbaum, Insurance, Hazardous Waste and the Courts: Unforeseen Injuries, Unforeseen Law, 13 Envtl. L. Rep. 10204, 10205-06 (1983). This is a particularly important issue in the present case, where the initial suit is a RCRA Section 7003 action, requesting broad injunctive relief, and the third party complaints seek to pass on costs incurred if the injunction is issued.

We note initially that the third party complaint filed by Royal et al. seeks not just to pass on clean-up costs by contribution and indemnification, but also seeks common law damages for injury to the Royals' property. It is not affected by this issue, at least so far as the insurer's duty to defend goes, because even if only part of the complaint is covered by the policy, the insurer still has to defend. *See Travelers Indem. Co. v. Dingwell*, 414 A. 2d 220 (Me. 1980).

The other two complaints, which allege only that TRS "contributed" to groundwater contamination and should have to contribute to or indemnify the owners and operators for costs incurred by the injunction, give rise to the damages issue. Since they seek to pass on liability that may arise under the Section 7003 action, we must examine the federal complaint. It seeks a broad injunction, requiring the owners and operators not merely to prevent further harm, but also to clean up the aquifer and to compensate Flemington residents by supplying alternative supplies. This gives the proposed federal injunction a strong remedial aspect, and it means that the owners and operators will have to pay out large sums, for what are essentially compensatory purposes, to comply with the injunction.

At this stage, then, we can say that the owners and operators seek to pass on those costs of remedying the present harm. Although called "equitable relief," these clean-up costs are essentially compensatory damages for injury to common property, the Flemington groundwater. They are thus covered by the general liability policies.

[5] Plaintiff TRS alleges also that the third party complaints allege facts covered by the automobile liability policies issued by defendants Penn and Peerless. The automobile liability policies provide, in pertinent part, that the insurers will defend any suit against the insured seeking damages on account of bodily injury or property damage caused by "an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an owned automobile or of a temporary substitute automobile." What is determinative in this case is the "arising out of" language. Our review of the facts as alleged convinces us that if TRS is responsible for the discharge of hazardous waste materials at the Flemington Landfill this was due to TRS's business policies and practices concerning materials handled, rather than to any particular feature of, or malfunction or improper operation of, the Dempsey Dumpsters. We do not find the requisite "causal connection" between use of the Dumpsters and the injury. *Casualty Co. v. Insurance Co.*, 16 N.C. App. 194, 198-9, 192 S.E. 2d 113, 118 (1972). We affirm the summary judgment against plaintiff TRS as to the automobile insurance policies.

The trial judge's order of summary judgment is reversed as to the policies of Manufacturers' and Contractors' Liability Insurance and Comprehensive General Liability Insurance, but is affirmed as to the automobile liability insurance policies.

Reversed in part and affirmed in part.

Judges WELLS and BECTON concur.