LAMBE REALTY INVESTMENT, INC., Plaintiff v. ALLSTATE INSURANCE COMPANY, Defendant

No. COA99-503

(Filed 21 March 2000)

**1. Appeal and Error— appealability—partial summary judgment—insurer's refusal to defend**

Certification under Rule 54(b) makes appellate review mandatory, but a trial court may not render a decree immediately appealable by certification if it is not a final judgment. Here, a partial summary judgment on the issue of an insurer's duty to defend was properly before the Court of Appeals because it affected a substantial right which might be lost absent an immediate appeal.

**2. Insurance— commercial liability policy—coverage—insurer's duty to defend**

The trial court correctly entered summary judgment for plaintiff on the issue of whether defendant-insurer had a duty to defend an action arising from an mobile home being left in an uninhabitable position after it was moved. Under the language of the policy, coverage was not provided under a provision dealing with damaged property, but the allegations of the underlying complaint triggered "Liabilities Covered" provisions. Exclusions for "completed work" and for individuals involved in real estate sales or management do not apply because the work never

1

reached a state of completion which would trigger the clause and because a reasonable person in plaintiff's position would have understood that normal business operations were covered under the policy. Defendant's construction of the policy would render the policy worthless for all practical purposes.

Judge HORTON concurring in the result.

Appeal by defendant from judgment entered 19 January 1999 by Judge Roland H. Hayes in District Court, Forsyth County. Heard in the Court of Appeals 26 January 2000.

*Morgan & Yankanich, P.A., by Eric C. Morgan, for plaintiff-appellee.*

*Burton & Sue, L.L.P., by Gary K. Sue and James D. Secor, III, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

This appeal arises out of an action brought by Lambe Realty Investment, Inc. ("LRI") seeking a declaratory judgment determining its rights under a commercial liability policy issued to it by Allstate Insurance Company ("Allstate"). The relevant facts follow.

On 19 May 1997, John C. and Tammy L. Kippe ("the Kippes") filed a lawsuit ("the underlying action" or "the underlying complaint") against LRI asserting claims for breach of contract, negligence, breach of warranty, breach of implied covenant of quiet enjoyment, constructive eviction, and unfair and deceptive trade practices. The underlying complaint alleges that the Kippes owned a 1991 Redmon Flamingo mobile home and that they had leased a lot at the East Forsyth Trailer Park on which to park the home. The trailer park was owned and operated by LRI. In 1995, the Kippes entered into a contract with LRI wherein LRI agreed to move the Kippes' mobile home to a new site in the town of East Bend, North Carolina. Under the terms of the agreement, the Kippes were to pay $300, and LRI was to pay the balance of the costs of moving and setting up the home, which included preparing a proper foundation, placing the home on that foundation, and securing the home in place. According to the underlying complaint, LRI moved the home to the new site but left it in an uninhabitable position. When LRI refused to do any further work, the Kippes undertook to reposition the home themselves and suffered severe damage, which rendered the home a total loss.

At the time the Kippes filed the underlying action, LRI had a commercial liability insurance policy with Allstate. Clarence Lambe, the president of LRI, became aware of the suit and notified his Allstate agent, Bob Hicks, of the litigation on or about 22 July 1997. Hicks reported the lawsuit to the Allstate Claims Office, and Monty Hall, a claims representative, informed Hicks that he would process the claim. Upon further investigation, however, Hall determined that LRI's policy excluded coverage for the underlying action instituted by the Kippes. Therefore, on 21 August 1997, Hall sent a letter to LRI denying any duty to defend it in the underlying action or to indemnify it against any recovery by the Kippes.

On 4 November 1997, LRI initiated the present action for declaratory relief against Allstate. The complaint seeks a judicial determination that Allstate owes LRI a duty both to defend it in the underlying action and to indemnify it for any resulting judgment or settlement. Following some discovery, LRI filed a motion for partial summary judgment on the issue of whether Allstate had a duty to defend LRI in the underlying action. The trial court conducted a hearing on the motion and, on 19 January 1999, entered judgment in favor of LRI. The court certified the order as immediately appealable pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Allstate filed timely notice of appeal.

_____

[1] Before addressing the merits of Allstate's appeal, we must examine whether the order directing partial summary judgment for LRI is immediately appealable. An interlocutory order, such as the one here, is immediately appealable in only two instances. The first is when the trial court enters a final judgment with respect to one or more, but less than all of the parties or claims and certifies the judgment for immediate review under Rule 54(b) of the Rules of Civil Procedure. *DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 585, 500 S.E.2d 666, 668 (1998). The second instance is when the order "affects a substantial right and will work injury to the appellant[] if not corrected before final judgment." *Perry v. Cullipher*, 69 N.C. App. 761, 762, 318 S.E.2d 354, 356 (1984).

In the present case, the trial court certified that partial summary judgment order as immediately appealable pursuant to Rule 54(b). Although certification of an order under Rule 54(b) makes appellate review mandatory, "the trial court may not, by certification, render its decree immediately appealable if '[it] is not a final judgment.' " *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999)

(quoting *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983)). With respect to the order in this case, the trial court apparently recognized that it was not a final judgment and certified it for immediate review based on the court's determination that the order "effects [sic] a substantial right of the parties." We agree with the court's conclusion that the order affects a substantial right.

As noted by the Supreme Court of Ohio,

The duty to defend is of great importance to both the insured and the insurer. If an insurer mistakenly refuses to defend its insured, the adverse consequences can be great. "When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor." (Citation omitted.) On the other hand, if the insurer is required to defend an insured, "* * * [the insurer] may try an expensive negligence case which a court may later hold is not within the terms of the policy. * * * (Citation omitted.)

The duty to defend is equally important to the insured. If the insurance company refuses to defend, then the insured often must choose to settle the suit as quickly as possible in order to avoid costly litigation, bring a declaratory judgment action against the insurer seeking a declaration that there is a duty to defend, or defend the suit without help from the insurer.

Thus, the duty to defend involves a substantial right to both the insured and the insurer.

*General Accident Ins. Co. v. Insurance Co. of North America*, 44 Ohio St. 3d 17, 21-22, 540 N.E.2d 266, 271 (1989). Accordingly, we conclude that the order of partial summary judgment on the issue of whether Allstate has a duty to defend LRI in the underlying action affects a substantial right that might be lost absent immediate appeal. Having determined that the appeal is properly before us, we proceed to our analysis of the contentions raised by the parties.

[2] At the outset, Allstate argues that the trial court improvidently granted LRI's motion for summary judgment on the question of whether, under the terms of the policy issued to LRI, Allstate had a duty to defend LRI in the underlying action brought by the Kippes. Allstate contends that the Kippes' complaint alleges facts which con-

clusively establish that their damages were not covered by LRI's policy and, therefore, Allstate had no duty to defend LRI in the underlying action. For the reasons hereinafter given, we conclude that the trial court committed no error and affirm the order of summary judgment.

In reviewing the propriety of summary judgment, this Court's task is to determine whether the pleadings and other evidentiary materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Yamaha Corp. v. Parks*, 72 N.C. App. 625, 325 S.E.2d 55 (1985); N.C.R. Civ. P. 56(c). The instant case concerns the construction of language used in the policy of insurance issued by Allstate to LRI. If the policy language as applied to the facts conclusively shows that Allstate has a duty to defend LRI in the underlying action, then the trial court was correct in entering summary judgment for LRI.

"There is no statutory requirement that an insurance company provide its insured with a defense." *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 391, 390 S.E.2d 150, 152 (1990). Nevertheless, an insurance provider may commit itself to such a responsibility under the terms of an insurance policy. *Id.* Thus, an insurer's duty to defend an action brought against its insured is determined by the language in the policy, *id.* at 392, 390 S.E.2d at 153, and this duty "is absolute when the allegations of the complaint bring the claim within the coverage of the policy," *Indiana Lumbermen's Mutual Ins. Co. v. Champion*, 80 N.C. App. 370, 376, 343 S.E.2d 15, 19 (1986). This is true, even if the facts alleged are only arguably covered by the policy. *See Wilkins v. American Motorists Ins. Co.*, 97 N.C. App. 266, 269, 388 S.E.2d 191, 193 (1990) ("[I]f the pleadings allege any facts which disclose a possibility that the insured's potential liability is covered under the policy, then the insurer has a duty to defend.") Furthermore, "where a complaint contains multiple theories of recovery, some covered by the policy and others excluded by it, the insurer still has a duty to defend." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 72 N.C. App. 80, 85, 323 S.E.2d 726, 730 (1984), *rev'd on other grounds*, 315 N.C. 688, 340 S.E.2d 374 (1986).

It is axiomatic that an insurance policy is a contract, the provisions of which govern the rights and responsibilities of the contracting parties. *Deason v. J. King Harrison Co.*, 127 N.C. App. 514, 517, 491 S.E.2d 666, 668 (1997), *aff'd in part and disc. review improvidently allowed in part*, 349 N.C. 220, 504 S.E.2d 784 (1998). " 'As with

all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued.' " *Brown*, 326 N.C. at 392, 390 S.E.2d at 153 (quoting *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978)). In reviewing an insurance policy, exclusions from coverage are strictly construed, *Stanback v. Westchester Fire Ins. Co.*, 68 N.C. App. 107, 114, 314 S.E.2d 775, 779 (1984), and any ambiguities in the policy are resolved against the insurer and in favor of the insured, *Brown*, 326 N.C. at 392, 390 S.E.2d at 153. With these principles in mind, we now examine the relevant provisions of the commercial liability policy issued by Allstate to LRI.

The policy in question contains two primary types of coverage: Coverage A applies to "Business Property" and Coverage B applies to "Business Liability." LRI takes the position that the underlying action brought by the Kippes falls squarely within the "Additional Protection" section of Coverage A and the "Comprehensive Liability" section of Coverage B and, thus, Allstate has an absolute duty to defend the underlying action. We will address each of these sections separately.

The relevant provisions of Coverage A read as follows:

**Part Two—Business Contents**

**Property Covered**

This policy covers the *replacement cost* . . . of business contents owned by you, usual to your business, on the premises described in the Declarations, or within 100 feet of such premises for which a limit of liability is shown in the Declarations, including:

1. Property of others, but not that of an employee, in your care, custody or control for business purposes.

. . . .

**Additional Protection**

In addition to the coverage under Parts One and Two, this policy also gives you the following protection for losses covered under Coverage A:

. . . .

2. Property in Transit

When coverage is provided under Part Two, we will also cover your business contents while in transit on vehicles owned by, rented to or controlled by you. . . . (Emphasis added.)

LAMBE REALTY INV., INC. v. ALLSTATE INS. CO.

[137 N.C. App. 1 (2000)]

LRI contends that pursuant to these provisions, Allstate has a duty to defend it in the underlying action, because the Kippes' mobile home was in LRI's "care, custody, and control" and was "in transit" when it was damaged. Allstate, on the other hand, persuasively argues that no duty to defend arises under Coverage A, because that section refers only to the "replacement cost" of damaged property and makes no mention of defending the insured against a lawsuit. Although LRI argues that the "duty to defend" is not limited to any particular type of coverage, this construction is contrary to the express language of the policy. The "Defense" provision of the policy appears in Part One of Coverage B and states that "[the insurer] will defend any suit brought against persons insured seeking damages to which *this Part* applies." (Emphasis added.) Thus, we conclude that Coverage A does not grant LRI any right to a defense in the underlying action. We proceed then to the question of whether a duty to defend LRI exists pursuant to Coverage B of the policy.

Under Coverage B, the policy pertinently provides the following:

**Part One—Comprehensive Liability**

**Liabilities Covered**

We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event . . . that occurs while this policy is in effect. We will cover accidental events arising out of your completed work or products only when the accidental event occurs away from premises you own or rent and:

1.  After the work has been completed or abandoned.

2.  The product is in the hands of the consumer.

. . . .

**Defense**

We will defend any suit brought against persons insured seeking damages to which this Part applies, even if the allegations in the suit are groundless, false or fraudulent.

The policy defines an "accidental event" as "an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage."

Allstate does not dispute that the allegations set forth in the underlying complaint are sufficient to trigger the "Liabilities

Covered" provisions of Coverage B. It is Allstate's position, however, that coverage is denied under Exclusions 12(a) and 13(f), which provide as follows:

### Exclusions—Liabilities We Do Not Cover

We do not cover:

. . . .

12. Any accidental events arising out of completed work resulting from:

a Operations related to transporting property, unless the accidental event results from a condition in or on the vehicle used to transport the property and the condition was created while loading or unloading the vehicle.

   Loading or unloading extends from the place where property is accepted for movement onto a vehicle to the place where property is finally delivered.

. . . .

13. Any damage:

. . . .

f. With respect to the completed work performed by you arising out of such work or any portion, or out of such materials, parts or equipment furnished in connection with the work.

LRI contends that these exclusions have no bearing on the present set of facts, because the gravamen of the Kippes' complaint is that the work to be done in setting up the mobile home was never completed. LRI's contention has merit.

Under the policy, "completed work" is defined as follows:

1. Your operations or operations performed on your behalf that are completed, or

2. Someone's reliance on a warranty or representation made relating to those operations.

**LAMBE REALTY INV., INC. v. ALLSTATE INS. CO.**

[137 N.C. App. 1 (2000)]

Operations includes materials, parts and equipment used in connection with your operations.

We will consider work to be completed at the earliest of the following times:

1. When all operations to be performed by you or on your behalf under the contract are finished, or

2. When all operations to be performed by you or on your behalf at the site of those operations are finished, or

3. When the portion of the work has been put to use by any person or organization, except for any contractor or sub-contractor working on the same project.

Operations which may need further maintenance or service, or which may require repairs or replacement because of a defect, will be considered to have been completed.

The Kippes' complaint alleges that LRI agreed to assume the responsibility of moving and setting up their mobile home, which "include[d] preparing proper foundations, placing the mobile home on those foundations, and tying the mobile home down." According to the Kippes, after moving the home, LRI "left it on the site in an uninhabitable position" and that LRI "simply abandoned" the home, refusing to complete the set up process. The complaint further states that after being contacted by the Kippes' attorney, LRI again "agreed to arrange to have the home properly set up and tied down on the lot." "The person selected by [LRI] . . . made no effort to set the home up so that it was level[,] . . . left the home sitting at a sharp angle so that the home was unlivable and . . . improperly used 'X' bracing under the mobile home to tie it down." When LRI "refused to . . . make any further efforts to have the work done properly," Mr. Kippe "attempt[ed] to level the home himself," during which "the home fell off its supports . . . and was destroyed."

The facts of this case are analogous to those of *Daniel v. Casualty*, 221 N.C. 75, 18 S.E.2d 819 (1942), wherein our Supreme Court was called upon to interpret the term "complete" within the meaning of a "completed operations hazard" exclusion. The insured, a plumbing company, had contracted with a customer to remove a hot water heater from their home and to convert it into a stove or room heater. The plaintiff introduced evidence tending to show that the plumbing company had agreed to fix the hot water heater so that it

would heat satisfactorily and would be safe. "In performing the job the plumbers sealed up the water jacket of the heater, but left some water inside." *Id.* at 76, 18 S.E.2d at 820. When the customer subsequently lit a fire in the converted heater, the water in the sealed water jacket turned to steam, expanded and created an explosion resulting in injury to the customer. The plumbing company's insurance provider raised as a defense the completed operations hazard exclusion.

In construing the term "complete," the Court stated the following:

> We do not consider that the work is complete within the meaning of the insurance contract so long as the workman has omitted or altogether failed to perform some substantial requirement essential to its functioning, the performance of which the owner still has a contractual right to demand.

> There is evidence here from which the jury might infer that by reason of the omission on the part of Alphin Plumbing and Heating Co. to do work essential to the functioning of the heater in the manner intended and called for in the contract, the work at the time plaintiff sustained her injury had never reached that condition of completeness that would render the restrictive clause in the policy operable.

*Id.* at 77, 18 S.E.2d at 820.

Applying the Court's reasoning in *Daniel*, we are convinced that the Kippes' claims do not fall under Exclusions 12(a) and 13(f), because LRI's actions with regard to setting up the mobile home do not come within the definition of "completed work." Under the terms of the agreement between the Kippes and LRI, "setting up" the mobile home "include[d] preparing proper foundations, placing the mobile home on those foundations, and tying the mobile home down." According to the complaint, LRI never satisfied this obligation; therefore, LRI's work "never reached that condition of completeness that would render [Exclusions 12(a) and 13(f)] operable." *Id.*

Allstate also contends that the facts of this case trigger Exclusion 22, which purports to withhold coverage for the following individuals:

> *Anyone* engaged in the business of real estate sales and/or real estate management with the exception of:

> a. That part of any premises used by persons insured for general office purposes, and

b. Premises listed with persons insured for sale or rental, pro-
vided that such premises are not owned, operated, managed
by, rented or in the care, custody or control of persons
insured, or as to which persons insured act as an agent for the
collection of rents or in any supervisory capacity, unless such
premises are specifically insured under Coverage A, Part One
of this policy. (Emphasis added.)

Allstate argues that Exclusion 22 "applies here because at the time of
the incident involving the Kippes, [LRI] was engaged in the business
of real estate sales and/or real estate management." LRI argues that
the construction offered by Allstate is erroneous, as it would effec-
tively deny coverage for LRI's ordinary business operations. Based on
the reasoning that follows, we find that the language of the exclusion
creates an ambiguity as to the true intention of the parties.

" 'An ambiguity exists when the language used in the policy is sus-
ceptible to different, and perhaps conflicting, interpretations.' " *City
of Greenville v. Haywood*, 130 N.C. App. 271, 275, 502 S.E.2d 430, 433
(quoting *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283,
290, 444 S.E.2d 487, 492, *disc. review denied*, 337 N.C. 694, 448 S.E.2d
528 (1994)), *disc. review denied*, 349 N.C. 354, —— S.E.2d —— (1998).
In other words, a provision of the policy is ambiguous if "the writing
leaves it uncertain as to what the agreement was." *International
Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385
S.E.2d 553, 556 (1989). As a general rule, "[a]mbiguities in insurance
policies are to be strictly construed against the drafter, the insurance
company, and in favor of the insured and coverage since the insur-
ance company prepared the policy and chose the language." *West
American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App.
312, 320, 409 S.E.2d 692, 697 (1991), *overruled on other grounds by
Gaston County Dyeing Co. v. Northfield Ins. Co.*, No. 10PA99, 2000
WL 126622 (N.C. Supreme Court Feb. 4, 2000). Moreover, exclusions
from coverage in insurance policies are disfavored and, as such, must
be narrowly construed. *Stanback*, 68 N.C. App. at 114, 314 S.E.2d at
779.

As previously mentioned, Exclusion 22 appears in a section of the
policy entitled, "*Liabilities* We Do Not Cover." Notably, however,
Exclusion 22 is the only exclusion within this section which purports
to deny coverage to an individual or entity. Every other exclusion in
this section addresses a particular liability. Indeed, the provision at
issue makes no reference to losses whatsoever; thus, it is unclear
from the language of the exclusion precisely what liabilities the par-

ties intended to exclude under the provision. Therefore, we conclude that Exclusion 22 is ambiguous.

"[W]hen an ambiguity exists, an insurance policy should be construed as a reasonable person in the position of the insured would have understood it to mean." *Tufco*, 104 N.C. App. at 321, 409 S.E.2d at 697. In our judgment, a reasonable person in Lambe's position would have understood that his normal business operations were covered under the policy. As the name suggests, Lambe Realty, Inc. (LRI) is in the business of selling, renting, and managing real estate, and Lambe purchased the commercial liability policy at issue to insure LRI against liabilities arising out of its ordinary business operations. Indeed, Lambe testified that when he purchased the policy in 1984, he asked Bob Hicks, Allstate's agent, for "umbrella" or "blanket" coverage "to make sure [LRI was] covered for any type of lawsuit that occurred." Allstate was aware of the nature of LRI's business, and according to Hicks' testimony, he advised Lambe that he was covered under the commercial policy "if [he got] sued for owning [his] business in a general or comprehensive manner." Thus, we reject Allstate's construction of Exclusion 22, as it would, for all practical purposes, render the policy worthless to LRI. *See id.* at 321, 409 S.E.2d at 697-98 (construing policy in favor of insured where insurance provider attempted to deny coverage for insured's normal business operations). Furthermore, given that the duty to defend is broader than the insured's duty to pay damages, *Waste Management*, 315 N.C. at 691, 340 S.E.2d at 377, we hold that Allstate has a duty to defend LRI in the underlying lawsuit.

Having concluded that the claims in the underlying complaint fall within the protection of the commercial liability policy and that none of the asserted exclusions apply, we hold that the trial court was correct in entering summary judgment for LRI on the issue of whether Allstate had a duty to defend it in the underlying action. We have examined Allstate's remaining argument and find it to be without merit.

The order of the trial court is, therefore,

Affirmed.

Judge MARTIN concurs.

Judge HORTON concurs in the result with a separate opinion.

LAMBE REALTY INV., INC. v. ALLSTATE INS. CO.

[137 N.C. App. 1 (2000)]

Judge HORTON concurring in the result.

Because our Supreme Court has held that the duty to defend an insured is broader than its duty to indemnify the insured for damages incurred by events allegedly covered by the policy of insurance, I concur in the result reached by the majority. *See Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986).

I also agree that the issue before us involves a substantial right of the appellant, but write separately to stress that the trial court cannot certify an appeal of an interlocutory order pursuant to the provisions of N.C. Gen. Stat. § 1A-1, Rule 54(b), on the grounds that it involves a substantial right. By its express language, Rule 54(b) limits the situations in which the trial court may certify a decision for immediate appeal. The rule provides, in pertinent part, that where an action includes more than one claim for relief, the trial court may

> enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes. *In the absence of entry of such a final judgment, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and shall not then be subject to review either by appeal or otherwise except as expressly provided by these rules or other statutes.*

*Id.* (emphasis added). Thus, although a party may appeal an interlocutory order and argue *on appeal* that the issue appealed affects a substantial right of the appellant, that argument must be directed to the appellate court and not to the trial court.