PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SUPERFORMANCE INTERNATIONAL,
INCORPORATED,

*Plaintiff-Appellant,*

v.

HARTFORD CASUALTY INSURANCE
COMPANY,

*Defendant-Appellee.*

No. 02-1718

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Jerome B. Friedman, District Judge.
(CA-01-113-4)

Argued: February 27, 2003

Decided: June 11, 2003

Before WIDENER, WILKINSON, and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Widener and Judge Wilkinson joined.

## COUNSEL

**ARGUED:** David A. Gauntlett, GAUNTLETT & ASSOCIATES, Irvine, California, for Appellant. Stacey Ann Moffet, ECCLESTON & WOLF, P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** James A. Lowe, GAUNTLETT & ASSOCIATES, Irvine, California; Douglas E. Miller, PATTEN, WORNOM, HATTEN & DIAMON-

STEIN, Newport News, Virginia, for Appellant. Matthew W. Lee, ECCLESTON & WOLF, P.C., Washington, D.C., for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Superformance International, Inc. ("Superformance") contends that Hartford Casualty Insurance Company ("Hartford"), as its insurer under a commercial general liability policy, owes it a defense and indemnity in a trademark infringement action brought against Superformance in the District of Massachusetts by Carroll Shelby, Carroll Shelby Licensing, Inc., Shelby American, Inc., and Ford Motor Company. The district court granted summary judgment to Hartford, ruling essentially that the policy did not cover injuries arising from conduct that preceded the policy's issuance and that the underlying complaint did not allege claims falling within coverage for advertising injury. For reasons that differ somewhat from those given by the district court, we affirm.

I

Superformance, an Ohio corporation with its principal place of business in Newport News, Virginia, is a manufacturer of specialty motor vehicles, including replicas of classic cars or "replicars," kit cars, and related parts and accessories. Among the replicars it manufactures and promotes for sale are race cars and roadsters modeled after the "Cobra" and "Shelby Cobra" designs, and in connection with their sale, Superformance employs the use of the names Cobra and Ford and allegedly other trademarks connected with the original Cobra vehicles.

The Cobra racing cars, after which Superformance's replicars are modeled, were designed and manufactured in the 1960s by Carroll Shelby in collaboration with the Ford Motor Company, and the vehicles used the trade name "Cobra" and designs depicting the cobra snake. Ford, which owns numerous trademarks that include "Cobra" and the snake, has granted Carroll Shelby and his businesses, Carroll

Shelby Licensing, Inc. and Shelby American, Inc., an exclusive license to use the trademarks relating to Cobra and the cobra snake designs for the vintage automobiles created, designed, and manufactured by Shelby. Carroll Shelby owns numerous trademarks that include "Shelby."

In December 2000, Shelby commenced a trademark infringement action against Superformance in the District of Massachusetts (the "Massachusetts Litigation"). As originally filed, Shelby's complaint alleged, in six counts, trademark infringement and dilution under §§ 32 and 43 of the Lanham Act (15 U.S.C. §§ 1114 and 1125) and State common law, as well as unfair competition under State common and statutory law. In August 2001, Shelby amended its complaint to allege a seventh count for violation of the United States import statutes prohibiting the importation of counterfeit products, particularly motor vehicles using Shelby's trademarks. Three months later, in November 2001, Ford Motor Company intervened in the Massachusetts Litigation, filing its own complaint in six counts that parallel Shelby's original six counts. It is in connection with this Massachusetts Litigation that Superformance seeks coverage from Hartford under the insurance policy issued by it.

Superformance did not purchase its policy from Hartford until three months after Shelby commenced its action in the Massachusetts Litigation. Specifically, on March 10, 2001, Superformance purchased a one-year commercial general liability policy to cover liability for, among other types of injury, personal and advertising injury. The policy was an "occurrence" policy, which means that it covered only personal and advertising injury "if the offense [was] committed in the 'coverage territory' [which includes the United States] during the policy period" of March 9, 2001, to March 9, 2002. After Superformance purchased this policy from Hartford, Shelby added the seventh count to its complaint in the Massachusetts Litigation relating to Superformance's imports of counterfeit vehicles and Ford intervened to file its complaint asserting trademark infringement, trademark dilution, and unfair competition claims.

The insurance policy defines "personal and advertising injury" in relevant part as injury "arising out of one or more of the following offenses":

d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; [or]

e.   Oral or written publication of material that violates a person's rights of privacy; or

f.   Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; [or]

g.   Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement."

The policy excludes coverage for injury:

(2)   Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period; [or]

* * *

(9)   Arising out of the infringement of trademark, trade name, service mark or other designation of origin or authenticity.

Several months after Superformance purchased the policy from Hartford, it tendered the defense of the Massachusetts Litigation to Hartford, characterizing the suit as one for "Federal Trademark Infringement, Federal and State Trademark Dilution and related causes of action." Hartford denied coverage under the policy, summarizing its position:

Plaintiff's complaint does not state any claim that could even arguably meet the definition of "Occurrence", "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" as stated in the policy. In addition, trademark related claims are specifically excluded [from coverage]. Moreover, to the extent any "Personal and Advertising Injury" occurred

prior to March 9, 2001, the policy expressly excludes coverage for material first published before the beginning of the policy period. With respect to "Advertising Injury", plaintiff does not allege any injury sustained from an "advertisement" of the insured.

Superformance thereafter commenced this action for breach of the insurance contract, seeking a declaratory judgment that Hartford's insurance policy covers the claims alleged in the Massachusetts Litigation and that Hartford breached its duties under the policy. The complaint also seeks money damages, including the costs incurred in defending the Massachusetts Litigation.

On cross-motions for summary judgment, the district court entered judgment in favor of Hartford, holding that "any potential claim [is] precluded under the Policy's first publication exclusion." The court found that the Shelby complaint as amended and the Ford complaint, both of which were filed in the Massachusetts Litigation after the issuance of the policy, were subject to the first-publication exclusion because they used the same language as the original Shelby complaint that preceded the policy and the gravamen of the complaints was the same. The court characterized Superformance's claim against Hartford as "an attempt to obtain retroactive insurance," which the policy prohibited by limiting coverage to occurrences during the policy period and by including the first publication exclusion. The court also held that even if the first-publication exclusion was not applicable to all of the allegations in the Massachusetts Litigation, most of the offenses asserted against Superformance did not qualify as "personal and advertising injury" as defined by the policy. As to claims of trade dress infringement, which the district court found would be covered by the Hartford policy, the court concluded that the allegations failed to state facts sufficient to support any such claims.

From the district court's judgment granting Hartford's motion for summary judgment and denying Superformance's motion, Superformance filed this appeal.

## II

Superformance concedes on appeal that Counts I through VI of the Shelby complaint do not implicate Hartford's duty to defend because

these counts were alleged prior to the policy period and therefore of necessity related to offenses committed before the policy period. It contends, however, that Count VII of the Shelby complaint and all of the counts of the Ford complaint, which were added to the Massachusetts Litigation after Superformance secured the insurance policy, allege violations that were committed during the policy period and therefore require a defense under the policy.

Because we cannot, as a matter of law, foreclose the possibility that Count VII of the Shelby complaint and the entire Ford complaint allege some conduct occurring during the policy period, we agree that coverage for these counts cannot categorically be barred by invocation of the policy period — i.e., March 9, 2001, to March 9, 2002. Accordingly, with respect to those counts — Count VII of the Shelby complaint and the six counts of the Ford complaint — we turn to the language of the policy to determine whether it affords a defense to Superformance.

Superformance contends that there are "three distinct pathways to a defense herein." *First*, it argues that the claims for trademark dilution and unfair competition amount to disparagement of a competitor's goods and therefore fall within the provision of the policy covering injury arising out of any "written publication of material that . . . disparages a person's or organization's goods, products or services." Superformance contends that trademark dilution and unfair competition are not the same as trademark infringement and therefore are not barred by the trademark infringement exclusion. *Second*, Superformance contends that even though the complaint does not use the term "trade dress," the complaint in fact alleges trade dress violation by alleging a trademark "in a particular body, chassis, etc." Asserting trade dress infringement as distinct from trademark infringement, Superformance contends that a trade dress claim falls within the coverage of advertising injury arising out of "[c]opying, in your 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement.'" *Third*, Superformance contends that Ford's complaint about Superformance's manufacture of vehicles replicating the Cobra amounts to "false advertising," also a claim that falls within the definition of advertising injury.

At the outset of our analysis, we note that because this case is based on diversity jurisdiction, we apply Virginia law because this

action was commenced in the Eastern District of Virginia and Hartford issued its policy to Superformance at Superformance's principal place of business in Newport News, Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941) (holding that a federal court sitting in a diversity-jurisdiction case must apply the choice-of-law principles of the State in which the federal court is located); *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993) ("[T]he law of the place where an insurance contract is written and delivered controls issues as to its coverage").

Under Virginia law, the determination of whether an insurer must defend an underlying action depends on comparison of the policy language with the underlying complaint "to determine whether any claims alleged [in the complaint] are covered by the policy." *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995). In addition, "[t]he insurer's obligation to defend is broader than its obligation to pay. The obligation to defend arises whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990) (internal citations omitted); *see also Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 791 (E.D. Va. 2001). Thus, in this case we must review the Shelby and Ford complaints to determine whether there is a *potentiality* that they state a claim that, if proved, could be covered by the policy issued by Hartford.

The Hartford policy provides coverage to Superformance for "personal and advertising injury," which is defined in relevant part as injury arising out of any "written publication of material that . . . disparages a person's or organization's goods, products or services" and any "[c]opying, in your 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement.'" The term "advertisement" is defined as "a dissemination of information or images that has the purpose of inducing the sale of goods, products or services . . . . However, 'advertisement' does not include the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products." But the policy excludes from coverage of personal and advertising injury any injury arising out of either "written publication of material whose first publication took place before the beginning of the policy period" or "the infringement

of trademark, trade name, service mark or other designation of origin or authenticity." We must lay these insurance policy provisions beside Count VII of the Shelby complaint and the six counts of the Ford complaint, for which Superformance seeks coverage, to determine whether the policy affords coverage for the claims made in the complaints.

Count VII of the Shelby complaint, asserting a violation of import statutes, alleges that Superformance imported into the United States "vehicles which infringe, dilute and counterfeit [Shelby's] valid and enforceable, federally registered United States trademarks and federally protected common-law trademarks and designs" without Shelby's consent. In this count, Shelby alleges in essence that Superformance imports vehicles manufactured in South Africa bearing labels and marks that infringe on marks owned by or licensed to Shelby.

Ford's complaint, alleged in six counts, may be summarized as follows:

*Count I*, entitled "Infringement of Federally Registered Trademarks," alleges the likelihood that Superformance's use of Ford's marks "has . . . intended to cause, has caused and is likely to continue to cause confusion, or to cause mistake or to deceive the public." It also alleges that Superformance "is likely to mislead prospective purchasers as to the affiliation, connection or association of Superformance . . . with Ford . . . or as to the origin, sponsorship, or approval of Superformance's Infringing Automotive Products or its web site by Ford."

*Count II*, entitled "Trademark Counterfeiting," alleges that Superformance's use of Ford's marks "constitutes use of spurious designations identical with, or substantially indistinguishable from, Ford's federally registered COBRA, COBRA Snake Design and FORD trademarks, and is without Ford's consent or authorization." It further alleges that Superformance's acts "have been willful, intentional, or in reckless disregard of Ford's aforesaid rights."

*Count III*, entitled "Federal Trademark Dilution," alleges that Superformance's use of Ford's marks has "intended to cause, has caused and is likely to continue to cause dilution of the distinctive

quality of the Marks in violation of 15 U.S.C. § 1125(c)." It alleges that "Superformance's aforesaid acts are likely to tarnish or injure Ford's business reputation."

*Count IV*, entitled "Trademark Dilution Under Massachusetts Law," alleges dilution under the state analogue. It alleges that "Superformance's aforesaid acts are likely to injure Ford's business reputation."

*Count V*, entitled "Unfair Competition," alleges that Superformance's use of Ford's marks "is likely to continue to cause confusion or to cause mistake or to deceive the public" and "is likely to mislead prospective purchasers, distributors and retailers as to the affiliation, connection, or association of Superformance, its Infringing Automotive Products, or its web site with Ford or Ford's Automotive Goods, or as to the origin, sponsorship, or approval of Superformance's Infringing Automotive Products or its web site by Ford, intending to cause purchasers to rely thereon," in violation of state common law of unfair competition and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

*Count VI*, entitled "Unfair Competition in Violation of Massachusetts Unfair Business Practices Act," alleges violation of the state statutory analogue of unfair competition.

For the reasons that follow, we read Count VII of the Shelby complaint and all of the Ford complaint as alleging straightforward trademark violations and unfair competition based on those violations. Count VII of the Shelby complaint alleges that Superformance violated various import statutes through the importation of its replicars manufactured in South Africa that bear Shelby's marks without its consent. That count relies on the violation of Shelby's rights as the owner or licensee of trademarks.

With respect to Ford's complaint, Counts I and II allege the necessary elements of a straightforward trademark infringement action under the Lanham Act, which requires a showing of a likelihood of confusion. *See* 15 U.S.C. §§ 1114, 1125. Under that Act, individuals are prohibited from using *registered* trademarks without permission "in connection with the sale, offering for sale, distribution, or adver-

tising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake, or to deceive." *Id.* § 1114(1)(a). To recover, a plaintiff must prove that the defendant's acts were "committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive." *Id.* § 1114(1). Section 43(a) of the Lanham Act prohibits similar conduct with respect to *unregistered* marks. *Id.* § 1125(a). Counts III and IV allege straightforward claims of trademark dilution, which is again actionable under the Lanham Act, 15 U.S.C. § 1125(c). A violation for trademark dilution exists where the alleged infringer uses the mark after it "has become famous and causes dilution of the distinctive quality of the mark," and the statute identifies several factors to consider in determining whether a mark is distinctive and famous. *Id.* § 1125(c). Finally, Counts V and VI allege straightforward claims of unfair competition through Superformance's use of the Ford name on products it enters into commerce.

All of these claims — Count VII of the Shelby complaint and all six counts of the Ford complaint — thus allege various sorts of trademark violations and related unfair competition based on those violations. None of the allegations go any further than the scope of the Lanham Act's purpose, which the Act defines as follows:

> The intent of this chapter [Chapter 22, consisting of the Lanham Act] is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. And complaints falling within the scope of the Lanham Act are precisely the type excluded from coverage by the terms of the Hartford policy. That policy excludes from coverage any per-

sonal or advertising injury "[a]rising out of the infringement of trademark, trade name, service mark or other designation of origin or authenticity."

Superformance argues that trademark dilution and trade dress infringement are conceptually distinct from straightforward trademark violations. It maintains that "the law of trademark dilution protects distinct interests from the law of trademark infringement" and that "[t]rade dress is inherently more expansive in its scope than trademark." Based on these distinctions, Superformance contends that the trademark exclusion in the Hartford policy does not cover much of Ford's complaint which, it asserts, may be characterized as a claim for trademark dilution or trade dress infringement.

The conceptual distinctions that Superformance seeks to make, however, are unsupportable. Although there are, to be sure, different legal avenues available under the Lanham Act to pursue a trademark claim, at bottom all protect the owner of a trademark against loss of, or damage to, his trademark interests. And claims for trademark dilution and trade dress infringement are expressly among those trademark claims recognized by the Lanham Act. *See* 15 U.S.C. § 1125(a) (claims of trademark and trade dress infringement); *\*id.* § 1125(c) (claims of trademark dilution). Moreover, as to trade dress infringement, the Supreme Court has clearly stated that trade dress and trademark infringement are very close cousins, both seeking to protect a designation of origin. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.

---

*Trade dress concerns the distinctive design, image, or packaging of a product. *See TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). It consists of a product's "total image and overall appearance, including its size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Ashley Furn. Indus. v. SanGiacomo N.A.*, 187 F.3d 363, 368 (4th Cir. 1999) (internal quotation marks omitted). As such, a trade dress infringement action "prohibits a manufacturer from 'passing off' his goods or services as those of another maker by virtue of substantial similarity between the products." *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). Understandably therefore Congress has located trade dress protection within the Lanham Act's general trademark infringement provision. *See* 15 U.S.C. § 1125(a)(3) (referring to civil actions for trade dress infringement); *TrafFix*, 532 U.S. at 29.

763, 773 (1992) (stating that "§ 43(a) provides no basis for distinguishing between trademark and trade dress. . . . There is no persuasive reason to apply different analysis to the two"). And on trademark dilution, while the Supreme Court has noted that, "[u]nlike traditional infringement law, the prohibitions against trademark dilution are not the product of common-law development, and are not motivated by an interest in protecting consumers" but rather by an interest in protecting the uniqueness of a mark, *Moseley v. V Secret Catalogue, Inc.*, 123 S. Ct. 1115, 1122 (2003), the differing motivations do not make trademark dilution something other than a trademark claim prosecutable under the Lanham Act.

The Hartford policy excludes injury arising out of infringement of "trademark, trade name, service mark or other designation of origin or authenticity." All of the claims made in the complaints against Superformance — trademark infringement, trade dress infringement, and trademark dilution, as well as unfair competition based on those violations — are varieties of trademark claims protected by the Lanham Act and State analogues.

We point out that in rejecting Superformance's conceptual distinction between trademark dilution and trade dress, on the one hand, and trademark infringement, on the other, when defining the category of trademark injury excluded from coverage of the Hartford policy, we overrule the district court's conclusion that trade dress infringement constitutes an "advertising injury" that is not excluded by the trademark exclusion.

Superformance also argues that coverage should be provided because the complaints can be construed as alleging claims of product "disparagement" and "false advertising," both of which, it argues, are included in the Hartford policy's definition of "personal and advertising injury." We cannot, however, read Ford's complaint to allege disparagement of Ford's products, except as the result of the alleged dilution of its trademarks. Similarly, even though Superformance's marketing of its motor vehicles as Cobras could possibly be seen as a form of deceit underlying false advertising, the complaint does not allege false advertising but rather trademark infringement, trade dress infringement, trademark dilution, and related unfair competition.

Even if these claims could arguably be characterized as claims for "disparagement" and "false advertising" that further satisfy the definition of "personal and advertising injury," they would still be properly excluded by the trademark exclusion. In addition, by characterizing the underlying claims as ones for disparagement and false advertising in an effort to bring them under the definition of "personal and advertising injury," Superformance would also bring them under the exclusion that their first publication occurred before the effective date of the policy. The policy denies coverage for any injury arising out of a "written publication of material whose first publication took place before the beginning of the policy period." The facts alleged in the original Shelby complaint, which were raised before the policy issued and which also serve as the basis for Count VII of the Shelby complaint and the Ford complaint, make clear that any false advertising or disparagement that can be inferred from the trademark infringement claims first occurred before the policy period.

In summary, when reading Count VII of the Shelby complaint and the entire Ford complaint and comparing the allegations made in them with the policy language, we find that none of the claims are covered by the insurance policy issued by Hartford to Superformance. Thus, albeit for reasons different from those advanced by the district court, we affirm the judgment of the district court.

*AFFIRMED*