Christopher LAMPARELLO, Plaintiff/Counter–Defendant,

v.

Jerry FALWELL et al., Defendants/Counter–Claimants.

No. CIV.A. 03–1503–A.

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 5, 2004.

---

Raymond Donald Battocchi, Gabeler Battocchi Griggs & Powell PLLC, Mclean, VA, for Plaintiff.

Frank M. Northam, Webster Chamberlain & Bean, Washington, DC, Jerry L. Falwell, Jr., Lynchburg, VA, Raymond Donald Battocchi, Gabeler Battocchi Griggs & Powell PLLC, Mclean, VA, for Defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter comes before the Court on cross motions for summary judgement. The dispute in this matter arises out of the use and registration of a website "www.fallwell.com." Plaintiff/Counter–Defendant, Christopher Lamparello ("Plaintiff" or "Counter–Defendant"), brings a complaint for declaratory relief seeking a declaration (1) that he has neither infringed nor diluted any trademark or falsely designated any origin, and that he is not in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and that he is not in violation of Section 43 of the Lanham Act, subsections (a), (c) or (d), 15 U.S.C. § § 1125(a), (c) or (d), (2) that he is not infringing or diluting under state law, that he has not engaged and is not engaging in unfair competition or otherwise in violation of any common-law trademark rights or any causes of action which may be alleged through counterclaims, (3) that any claims under these statutes have expired under the applicable statutes of limitations or laches, and (4) that any claims brought under these statutes are barred by the First Amendment and by principles of fair use, including nominative use and parody. Defendant/Counter–Claimant, Jerry Falwell ("Falwell") and Jerry Falwell Ministries ("Falwell Ministries") (together "Defendants" or "Counter–Claimants"), bring an action asserting the following claims against the Counter–Defendants for (1) Federal Trademark Infringement (Jerry Falwell only) under Section 32 of the Lan-

ham Act, 15 U.S.C. 1114 ("Count I"), (2) False Designation of Origin under Section 45 of the Lanham Act, 15 U.S.C. 1125(a) ("Count II"), (3) Federal unfair competition under 15 U.S.C. 1126 and state unfair competition under Virginia common law ("Count III"), and (4) Federal cybersquatting under 15 U.S.C. 1125(d) ("Count IV").

Each of the parties agrees that there are no material facts in dispute and that the matter is ripe for summary judgement on the issues. Plaintiff/Counter–Defendant operated the website www.fallwell.com as a platform for the expression of his view points on homosexuality and his disagreement on similar issues with the Defendants/Counter–Claimants. Both parties agree that Plaintiff/Counter–Defendant at one time provided a hyperlink for the sale of a book on the website amazon.com.

Summary judgment is appropriate where there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *See Id.* Mere speculation by the non-moving party "cannot create a genuine issue of material fact." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). When a motion

for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. *See Smith v. Virginia Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

As it is dispositive of all the motions, the Court will address Defendants' motion for summary judgment first.

■ In order to prove a claim for Section 32 Trademark Infringement, a counter-claimant has the burden of proving the following: (1) that it possesses a mark; (2) that the counter-defendant used the mark; (3) that the counter-defendant's use of the mark occurred 'in commerce'; (4) that the counter-defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the counter-defendant used the mark in manner likely to confuse consumers. *People For Ethical Treatment Of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001).

■ Counter-claimant Jerry Falwell satisfies the first element of Count 1 as he possesses a registered trademark.[1] Evidence demonstrates, and the Counter–Defendants do not deny, that Mr. Falwell has a trademark registration in the United States for "Listen America with Jerry Falwell."

It is also clear that the Counter–Defendant "used the mark." In order to show that Defendant "used the mark." Plaintiff need not show that the Defendant used an exact match of the trademark at issue. 263 F.3d at 364; *See* 15 U.S.C. § 1114 (2004). For Trademark Infringement, a plain reading of 15 U.S.C. § 1114(1)(a) provides that "any...colorable imitation"

---

1. Counter-claimant Falwell Ministries does not hold a registered trademark and does not press a claim under 15 U.S.C. § 1114.

of the trademark is enough. Counter–Defendant's registered domain name www.fallwell.com clearly is a "colorable imitation" of the "Listen America with Jerry Falwell" mark. *See e.g. Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,* 213 F.Supp.2d. 612, 619 (E.D.Va. 2002). *Cable News Network L.P., L.L.L.P. v. CNNews.com,* 177 F.Supp.2d 506, 517 (E.D.Va.2001).

■ The "in commerce" element of the test set forth in *Doughney* simply denotes Congress's authority under the Commerce Clause rather than an intent to limit the Act's application to profit making activity. *Cable News Network* at 506. Commerce as used under the Lanham Act is, in fact, simply "coterminous with that commerce that Congress may regulate under the Commerce Clause of the United States Constitution." *International Bancorp, LLC v. Societe des Bains de Mer et du Cercle,* 329 F.3d 359, 366 (4th Cir.2003). The nature of the internet is such that Counter–Defendant's website is available 'in commerce' throughout the United States and around the world; this element is satisfied.

The evidence shows and the Counter–Defendant does not deny, that he has in the past used www.fallwell.com to provide a hyperlink to www.amazon.com for the sale of a book. Additionally, Counter–Defendant's activities are clearly "services" within the meaning of the Lanham Act. Although the majority of Counter–Defendant's activities are not undertaken for profit, he has unquestionably rendered a service, i.e. the provision of information and viewpoints critical of the Counter–Claimants. Were activities such as the Counter–Defendants not considered services these Lanham Act protections would essentially be rendered toothless; anyone would be entirely free to distribute publicity statements, endorsements, and position papers in the name of the Counter–Claimants so long as they did not profit from such activities. Counter–Claimants have satisfied the third element.

■ In determining whether likelihood of confusion exists, the Court must consider the following factors: (1) the strength or distinctiveness of the counter-claimant's mark, (2) the similarity of the two parties' marks, (3) the similarity of the goods and services the marks identify, (4) the similarity of the facilities the two parties use in their businesses, (5) the similarity of advertising used by the two parties, (6) the counter-defendant's intent, and (7) actual confusion. *Petro Stopping Centers, L.P. v. James River Petroleum,* 130 F.3d 88, 91 (4th Cir.1997), citing *Pizzeria Uno,* 747 F.2d 1522 (4th Cir.1984).

Counter-claimants have shown a likelihood of confusion. The "Listen America with Jerry Falwell" trademark is distinctive and strong. The substantive portion of the trademark at issue is nearly identical to the Counter–Defendant's domain name. The parties use the same facility, the internet, to advance their points of view on morality and Christianity to others. The Counter-claimants have also shown actual confusion. Counter-claimants have presented evidence that individuals have specifically confused the Counter–Defendant's website with a website run by the Counter–Claimants. Counter-claimants also presented evidence in the form of a survey of mail sent to Jerry Falwell Ministries. During the mail survey, three percent of senders spelled Counter–Claimant Jerry Falwell's name f-a-l-l-w-e-l-l. Additionally, in consideration of the fact that the Counter–Defendant's domain name is nearly identical to the substantive portion of the trademark and the names of the Counter–Claimants, it is likely that Internet users will conclude that the mark, the names of the Counter–

Claimant, and the domain name used by the Defendant share a common affiliation or sponsorship. Defendants have also employed internet "meta-tags" to facilitate this exact type of confusion. For such reasons, the Counter–Claimants are entitled to summary judgement on Count I.

■ In order to prove a claim for Section 43, False Designation of Origin, a counter-claimant has the burden of showing the same four elements: (1) that it possesses a mark; (2) that the counter-defendant used the mark; (3) that the counter-defendant's use of the mark occurred 'in commerce'; (4) that the counter-defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the counter-defendant used the mark in manner likely to confuse consumers. *People For Ethical Treatment Of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir.2001).[2] This section of the Lanham Act prohibits similar conduct with respect to unregistered marks. *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 222 (4th Cir.2003); *See International Bancorp v. Societe des Bains de Mer*, 329 F.3d 359, 363 (4th Cir.2003).

The first element of the test is clearly satisfied. Counter-claimants and Counter–Defendant agree that since at least 1997 and at all times since then, Counter-claimant Falwell has held a common law trademark in the words "Falwell" and "Jerry Falwell." They agree that both Counter–Claimants have held a common law trademark in "Falwell.com" since 1998.[3]

As for the second element, a plain reading of 15 U.S.C. § 1125(a)(1) provides that in order to prove a claim under Count II for False Designation of Origin., a counter-claimant need only show that a counter-defendant used "any word, term, name, symbol, or device." 15 U.S.C. 1125(a)(1) (2004). *Ipso facto*, the Counter–Defendant used a "a word, term, [or] name." *See e.g. Eurotech, Inc.* at 619; *Cable News Network L.P.* at 517. This is not in dispute.

Counter-claimants have satisfied the third and the fourth elements for the reasons they satisfied them in Count I above.

Counter–Claimants have also proven a likelihood of confusion as to the Common–Law Marks. The likelihood of confusion, discussed above regarding Count I, is applicable to the Common–Law Marks. Counter–Defendants do not contest that the Jerry Falwell name is well known and famous throughout the country. Both parties agree that the Jerry Falwell and Falwell marks are distinctive. It follows then that the Falwell.com mark is also distinctive. In fact, the degree of similarity between the Common–Law Marks and the website used by the Counter–Defendants is overwhelming. There is only a single letter differentiating the words and they are phonetically identical. For these reasons, Counter–Claimants are entitled to summary judgment as to the Common–Law Marks.

■ Additionally, in the Fourth Circuit, "[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as for common law

---

**2.** While Defendants assert a claim under 15 U.S.C. 1126 for a violation of federal unfair competition law, no such cause of action exists. False Designation of Origin is commonly referred to as unfair competition law and so this Court has construed any claim by the Plaintiffs for violation of federal unfair com-

petition law as a claim for violation of 15 U.S.C. 1125. State unfair competition law is addressed below.

**3.** These three marks together consist of the common-law trademarks at issue in the case (the "Common–Law Trademarks").

unfair competition under Virginia law...." *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 160 (4th Cir. 1962). As Counter–Claimants are entitled to summary judgment on their claims for Federal Trademark Infringement and Unfair Competition/False Designation of Origin pursuant to 15 U.S.C. 1125(a) and 1114, they are also entitled to summary judgment on any state law unfair competition claims.

■ In order to prevail on a claim for Cybersquatting, a counter-claimant must first show that a counter-defendant 1) registered, trafficked in, or used a domain name; 2) that is identical or confusingly similar to a distinctive mark; or 3) is identical, confusingly similar to, or dilutive of a famous mark. 15 U.S.C. § 1125(d)(1)(A)(ii) (2004). Counter-claimants have shown this above. Second, a counter-claimant must prove that a counter-defendant has a bad faith intent to profit from using the domain name at issue. *Id.*

In determining whether a person has a bad faith intent...a court may consider factors such as, but not limited to—(I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names...; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous....

15 U.S.C. 1125(d)(1)(B) (2004). The statute also establishes a safe harbor providing that "[b]ad faith intent...shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id.*

There is no evidence that the Counter–Defendant offered to sell the disputed website for any financial gain and the Defendant has not acquired multiple domain names for such a purpose. Nevertheless, the Counter–Defendant did not possess any intellectual property rights in the name Fallwell or Fallwell.com when he registered the domain name. His legal name is not the same as the domain name at issue. He had not engaged in use of the domain name in connection with the bona fide offering of any goods or services

prior to the actual registration of the domain name Fallwell.com. His website was commercial; he used www.fallwell.com to sell a book via a hyperlink to amazon.com. He did not make fair use of the mark. He intended to divert consumers from the Counter–Claimants' website to www.fallwell.com so that he could harm the goodwill with the direct intent to tarnish or disparage the Counter–Claimants' marks. In fact, it appears that this is the only goal of the Counter–Defendant's website. Furthermore, he improperly registered an unknown entity known as "Lamparello International" when he first registered the domain name. Defendant's activities clearly evidence a bad faith intent. It is clear that he specifically intended to divert individuals from the Counter–Claimants' own websites in an effort to provide those diverted individuals with commentary and criticism of Counter–Claimants' beliefs and actions. For such reasons, it is clear that the Counter–Defendant did have a bad faith intent to profit. It is also clear that he did not believe, and did not have a reasonable reason to believe, that the use of www.fallwell.com was a fair use or otherwise lawful. For these reasons, summary judgment should be granted in favor of the Counter–Claimant.

■ Furthermore, Counter–Claimant's claims are not barred by the applicable statute of limitations. As the Lanham Act provides no express statute of limitations it is appropriate for the Court to use the analogous state limitations period. *Reed v. United Trnsp. Union,* 488 U.S. 319, 323–24, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). Under Virginia law the statute of limitations for injuries to property is five years. *See* Va. Stat. Ann. § 8.01–243 (2004). Because trademark rights have the characteristics of property it would appear that infringement claims brought pursuant to the Lanham Act constitute injuries to property and the five year statute of limitations applies. Counter–Defendant registered www.fallwell.com on February 11, 1999. Counter–Claimant's counterclaim was filed on February 5, 2004, prior to the running of the applicable statute of limitations. Since this action was timely filed Counter–Defendant's Laches arguments are without merit.

■ Counter–Claimants request the entry of a permanent injunction requiring transfer of the domain name and destruction of all materials containing the Fallwell.com mark, statutory damages in the amount of $100,000 pursuant to 15 U.S.C. 1117(d), and attorney's fees pursuant to 15 U.S.C. 1117(a) along with costs and prejudgment interest.

While Counter–Claimant is entitled to a permanent injunction enjoining use of the Fallwell.com website and transfer of the domain name to Counter–Claimants, Counter–Claimant is not entitled to statutory damages. Financial profit was a minor motive in the use of the website at issue. The primary motive was to put forth opinions on issues that were contrary to those of the Counter–Claimant. While the web site was used to put forth Counter–Defendant's opinions and ideas by using Counter–Claimants mark, the primary motive was not to take away monies or to profit. As such there should be no award of damages or attorney fees.

An appropriate order shall issue.

### ORDER

For reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the Plaintiff's motion for summary judgement is DENIED, Defendants and Counter–Claimant's motion for summary judgement is GRANTED and the Plaintiff is hereby

ORDERED to cease any further use of the Defendants' and Counter–Claimant's trademarks and to forthwith convey and transfer to the Defendants and Counter–Claimant the Fallwell.com website.