**DECISIONONE CORPORATION**

v.

**ITT HARTFORD INSURANCE GROUP.**

Civil Action No. 96–3684.

United States District Court,
E.D. Pennsylvania.

Oct. 22, 1996.

Douglas Y. Christian, Reed, Smith, Shaw & McClay, Philadelphia, PA and Brian Anthony Pori, Law Offices of Malcolm A. Misuraca, San Francisco, CA, for Plaintiff.

William M. Savino, Jubanyik, Varbalow, Tedesco, Shaw & Shaffer, Cherry Hill, NJ, Edward C. Mintzer, McWilliams and Mintzer, P.C., Philadelphia, PA, Stephen J. Smirti, Jr., and Robert Tugander, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, NY, for Defendant.

### *MEMORANDUM*

BARTLE, District Judge.

Plaintiff DecisionOne Corporation ("DecisionOne"), successor in interest to Bell Atlantic Business Systems Services, Inc. ("Bell Atlantic"), instituted this diversity action against its insurer, ITT Hartford Insurance Group ("Hartford"). DecisionOne seeks to recover some $3,000,000 in costs Bell Atlantic incurred in defending itself on a counterclaim in *Bell Atlantic Business Systems Services, Inc. v. Storage Technology Corporation* filed in the United States District Court for the Northern District of California. DecisionOne is also seeking punitive damages, attorney's fees, interest and costs pursuant to 42 Pa. Cons.Stat.Ann. § 8371, based upon Hartford's alleged bad faith in refusing to defend the action. Now before the court is Hartford's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure on the ground that it had no duty to defend Bell Atlantic. According to Hartford, the claims against Bell Atlantic were not covered under the policy.

A judgment on the pleadings is only proper if "no set of facts could be adduced to support the plaintiff's claim for relief." *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980). Bell Atlantic's allegations must be assumed true and all reasonable inferences drawn in its favor. *Id.*

**I**

The material facts taken from the pleadings are not in genuine dispute. On January 21, 1994 Bell Atlantic filed suit against Storage Technology Corporation ("STK"), a company which designed and manufactured in-

formation storage and retrieval subsystems that operated inside computers. STK also "writes original computer software and microcode that is used to operate and service STK equipment." STK Counterclaim ¶ 4. Bell Atlantic performed computer maintenance for STK. In the lawsuit, Bell Atlantic pleaded that STK violated the federal antitrust laws.

STK counterclaimed. STK alleged that in the course of servicing STK computer equipment, Bell Atlantic infringed STK's microcode and maintenance software copyrights. STK claimed that whenever Bell installed or maintained an STK automated cartridge system, it would load or "boot" the STK copyrighted microcode, creating a new copy and infringing its copyright. At times, STK also alleged, Bell Atlantic would copy STK software directly onto another floppy disk belonging to Bell Atlantic. STK maintained that Bell Atlantic was pursuing a campaign to misappropriate their trade secrets and "other valuable technical and business information." STK Counterclaim ¶ 17. STK listed these trade secrets to include, without limitation,

> functional microcode and maintenance software; design and performance specifications, tolerances, gaps, calibrations, and torque wrench settings for the installation relocation, and service of library equipment; procedures, processes, flow charts, logic and block diagrams, instructions, techniques, and check lists for the efficient installation, relocation, and service of library equipment; training processes, procedures, instructions, techniques, and check lists for the efficient installation, relocation, and service of STK library equipment; all manuals, training materials, and technical documentation for library equipment, …; installation and maintenance tools and the design and specifications for such tools; and, installation and diagnostic test procedures and parameters.

STK Counterclaim ¶ 19. According to the counterclaim, Bell Atlantic raided STK's customer service engineers for the purpose of acquiring these trade secrets and other valuable information. It accused Bell Atlantic of inducing customers and former STK employees to break their confidentiality agreements and share STK secrets. STK alleged that Bell Atlantic would then disclose these trade secrets to engineers it was training. STK also stated that Bell Atlantic misrepresented to its customers that it made its own maintenance software, which induced some of STK's former customers to switch to Bell Atlantic. The misrepresentation to customers involved "the source, nature, characteristics, and quality of its ability to maintain STK library equipment," and included representations that Bell Atlantic could service STK equipment as well as STK could do so. STK Counterclaim ¶ 26.

After these general allegations, STK listed nine specific counterclaims: (1) copyright infringement; (2) contributory copyright infringement for aiding and abetting others to infringe STK's copyrights; (3) misappropriation of trade secrets; (4) unfair competition; (5) Lanham Act violations; (6) Colorado Consumer Protection Act violations; (7) intentional interference with customer contracts; (8) intentional interference with employee confidentiality contracts; and (9) intentional interference with licensing agreement contracts. These nine counts contained additional factual averments.

At the time when this counterclaim was filed, Bell Atlantic Corporation, the parent corporation of Bell Atlantic, possessed a commercial general liability ("CGL") policy issued by Hartford. Bell Atlantic claimed coverage under this policy, as a subsidiary of Bell Atlantic Corporation. The policy was in effect from April 1, 1993 to April 1, 1994. After Bell Atlantic tendered the counterclaim to Hartford, the latter denied coverage. As a result, Bell Atlantic defended itself in the action with STK. That case ultimately settled and this lawsuit followed.

■ Under Pennsylvania law, which all parties agree is applicable, an insurer owes a duty to defend its insured in a suit brought by a third party so long as it appears on the face of that party's pleading that the allegations "may potentially come within the coverage of the policy." *Heffernan & Company v. Hartford Insurance Co.*, 418 Pa.Super. 326, 614 A.2d 295, 298 (1992); *accord C.H. Heist Caribe Corp. v. American Home Assurance*

*Co.*, 640 F.2d 479, 483 (3d Cir.1981). If a single claim in a multi-claim lawsuit has potential for coverage, the insurer must defend all claims until it is obvious that no possibility of recovery exists as to claims within the policy provisions. *American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir.1985); *Heffernan*, 614 A.2d at 298. All ambiguities must be construed in favor of the insured, although a court should not strain to create any such ambiguity. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760–61 (3d Cir.1985).

Hartford first states that all of the claims arise out of "programming" and thus are precluded by the policy's programming exclusion which reads:

> This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of or which would have not have occurred but for "programming." "Programming" means any of the following: 1. Statements or instructions, regardless of the form or method of their embodiment, that are used or intended to be used directly or indirectly in or with a computer or a computer system; or 2. Any and all information that is used or intended to be used in connection with or to explain such statements or instructions or their operation, such as specifications, flow diagrams or manuals.

Hartford further contends that even if the programming exclusion does not apply, the advertising injury and personal injury portions of the policy, on which DecisionOne relies, do not afford coverage. The policy provides insurance for:

> (1) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
>
> (2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services;
>
> but only if the offense was committed in the 'coverage territory' during the policy period.

CGL policy at Coverage B. Several exclusions limit this coverage. The coverage does not extend to personal or advertising injury:

> (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
>
> (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
>
> . . . . .

Moreover, advertising injury arising out of "[t]he failure of goods, products or services to conform with advertised quality of performance" is excluded.

Section V of the policy defines key terms contained therein, including "advertising injury" and "personal injury." Advertising injury

> means injury arising out of one or more of the following offenses:
>
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b. Oral or written publication of material that violates a person's right of privacy;
>
> c. Misappropriation of advertising ideas or style of doing business; or
>
> d. Infringement of copyright, title or slogan.

Personal injury is defined in relevant part to

> mean[ ] injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> . . . . .
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services
>
> . . . . .

We must now compare STK's counterclaim with the language of the policy to determine if at least one claim is potentially covered. *American Contract*, 752 F.2d at 75.

**II**

■ The STK counterclaim, as noted above, includes allegations under the Lanham Act, 15 U.S.C. § 1125. That Act creates

a cause of action for any false or misleading descriptions or representations of a product. *U.S. Healthcare v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 921 (3d· Cir.), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). The statute states in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or· geographic origin of his or her or another person's · goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

The STK allegations under this Act potentially state a claim covered under the advertising injury provision of the Hartford policy. Under this policy provision four prerequisites must be met: (1) the injury must be committed in the course of advertising the insured's goods, products, or services; (2) the injury must arise out of the offenses enumerated in the advertising injury definition; (3) the injury must be caused by the offense committed in the course of advertising; and (4) the offense must be committed during the policy period.

In its counterclaim, STK alleges that Bell Atlantic "falsely designated the origin and source of its ability to maintain STK equipment," and "falsely promoted or advertised its maintenance of STK library equipment" in violation of the Lanham Act. STK Counterclaim ¶ 70 (emphasis added). STK further pleaded that "in the course of its commercial and promotional activities designed to secure library maintenance contracts Bell Atlantic made false or misleading factual representations concerning its maintenance of STK library equipment and made false or misleading comparisons ·between itself and· STK" which caused customers to switch from STK to Bell Atlantic. STK Counterclaim ¶¶ 71, 73.

Hartford maintains that the violations of the Lanham Act were not committed in the course of advertising,. but arose out of copyright infringement. According to Hartford, the gravamen of the claim is copyright infringement and theft of trade secrets, which are not covered under the policy. We are not persuaded. The STK Lanham Act counterclaim clearly is not so restricted. STK's allegation that Bell Atlantic "has falsely promoted or advertised its maintenance of the STK library equipment" is not limited to and does not even refer to copyright infringement or trade secrets. The general allegations contained in the first 68 paragraphs of the counterclaims describe Bell Atlantic's wrongful conduct not only in connection with STK's copyrighted information and trade secrets, but also with "other valuable technical and ·business information." STK Counterclaim ¶ 17.[1]

---

1. Hartford cites several cases for the proposition that STK's allegations do not arise from the course of Bell Atlantic's advertising. However, in those cases no actual advertising occurred or was alleged to have occurred. *See Simply Fresh Fruit, Inc. v. Continental Ins. Co.,* 94 F.3d 1219, 1222 (9th Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3181 (U.S. Aug. 27, 1996) (No. 96–333); *Microtec Research v. Nationwide Mut. Ins. Co.,* 40 F.3d 968, 970 (9th Cir.1994); *Sentry Ins. Co. v. R.J. Weber Co.,* 2 F.3d 554, 557 (5th Cir. 1993); *Atlantic Mut. Ins. v. Brotech Corp.,* 857 F.Supp. 423, 429 (E.D.Pa.1994), *aff'd,* 60 F.3d 813 (3d Cir.1995). The lack of alleged advertising was the reason there was no coverage under the advertising injury portion of these policies. Hartford's characterization otherwise is inaccurate. For example, Hartford points us to a passage in *Microtec* which says "[i]f the tortfeasor does some wrongful act and then advertises it, the harm caused by the wrongful act **alone** is not within the scope of advertising injury." *Microtec,* 40 F.3d at 971 (emphasis added). STK is not alleging harm solely from theft of trade secrets or copyright infringement. It also alleges injury **from plaintiff's advertising.**

Moreover, the alleged injury arose out of an offense enumerated in the policy, specifically, the oral or written publication of material that disparages a person's or organization's goods, products or services. Hartford does not define "disparagement" in its policy. According to *Black's Law Dictionary*, it is "[a] statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy." *Black's Law Dictionary* (6th ed. 1990). Because Bell Atlantic allegedly made false and misleading comparisons to STK's services, such that customers switched service providers, the allegations lie within the advertising injury definition as disparaging STK's services.

The Lanham Act count clearly alleges that "as a result of Bell Atlantic's wrongful acts and threatened continued wrongful acts, STK has suffered and will continue to suffer immediate and irreparable harm, damages, and loss." STK Counterclaim ¶ 75. The wrongful acts causing continued harm include Bell Atlantic's false promotion and advertisement of its maintenance of STK library equipment and false comparisons to STK. Thus, the causation requirement under the policy is met.

 Finally, there are no applicable policy exclusions to prevent coverage of the Lanham Act count. The programming exclusion, on which Hartford heavily relies, is not applicable. In STK's Lanham Act allegations, there is no explicit or implicit limitation to computer programming. Instead, the STK allegations focus on false and misleading statements, representations, and comparisons that Bell Atlantic made concerning its ability to service or maintain STK library equipment. The facts supplied by STK are not sufficient to assume that only programming is implicated. Also, the exclusion for the failure of goods, products or services to conform with advertised quality or performance, is not applicable. STK was not claiming that Bell Atlantic's quality did not rise to the level advertised. It was claiming that Bell made misleading and false comparisons with STK's products and services. Further, the exclusion for oral or written publication of material, if done at the direction of the insured "with knowledge of its falsity," is not relevant. While STK alleges that Bell Atlantic's acts were intentional, willful, wanton and malicious, it also alleges that its acts were **reckless.** STK Counterclaim ¶ 74 (emphasis added). Under Pennsylvania law, "recklessness is something more than negligence but less than an intentional act." *Princeton Ins. Co. v. LaHoda*, No. CIV. A. 95–5036, 1996 WL 11353 at *4 (Jan. 4, 1996 E.D.Pa.); *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246, 247 n. 1 (1988); *United Services Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 989 (1986), *appeal denied*, 515 Pa. 600, 601, 528 A.2d 957 (1987). Knowledge of falsity is not a definitive element of recklessness. *See, e.g. St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968); *New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964); *Garrison v. State of Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964); Restatement (Second) of Torts § 500; *Black's Law Dictionary* (6th ed. 1990). Thus, STK alleges, in the alternative and under our liberal standard of notice pleading, that Bell Atlantic's conduct may have been without knowledge of its falsity.

Moreover, for purposes of this motion only, Hartford has assumed that any offense alleged by STK was committed during the policy period. Thus, we conclude that STK's count for violation of the Lanham Act was potentially within the policy coverage and that Hartford had a duty to defend.[2]

2. Hartford also points us to the Third Circuit decision in *United States Golf Assoc. v. St. Andrews Systems, Data-Max, Inc.*, 749 F.2d 1028 (3d Cir.1984), and claims that Bell Atlantic "shies away from" discussion of its merits. According to Hartford, this case holds that the misappropriation doctrine does not apply to the Lanham Act protection of deception of origin claims. STK, however, is alleging more. In addition, Hartford fails to recognize that the Lanham Act was amended in 1988 to encompass claims beyond simply deception of origin. *See U.S. Healthcare*, 898 F.2d at 921. *U.S. Golf* was decided in 1984, prior to this amendment. Finally, there is coverage under the advertising injury coverage based on disparaging statements about another's goods and services, not based on misappropriation.

**1044**

### III

■ In addition, STK's sixth count, alleging deceptive trade practices in violation of the Colorado Consumer Protection Act, Colo. Rev.Stat.Ann. § 6–1–105,[3] is potentially covered under the policy. While STK does not specify which portion of the Colorado Act Bell Atlantic violated, at least one subsection of the statute seems applicable given the thrust of STK's allegations. The statute states in relevant part:

> A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person:
>
> . . . . .
>
> (h) Disparages the goods, services, property, or business of another by false or misleading representation of fact;
>
> . . . . .

Colo.Rev.Stat.Ann. § 6–1–105.

STK alleges that Bell Atlantic's deceptive trade practices under this Colorado statute were "intentional, willful, malicious, and in conscious and **reckless** disregard for STK's rights." STK Counterclaim ¶ 82 (emphasis added). Reckless conduct, as noted above, does not have as an element "knowledge of its falsity." Moreover, disparagement of another's goods or services is included in the definition of both personal and advertising injury.[4] Further, STK alleges these acts, made unlawful by the Colorado Consumer Protection Act, caused it to suffer "immediate and irreparable harm, damage, and loss." STK Counterclaim ¶ 83. Thus, the causal connection required by the policy is met. Again, not all of STK's allegations concerned programming. Because doubt should be resolved in favor of the insured, Hartford had a duty to defend this claim. *C.H. Heist,* 640 F.2d at 481; *Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 487 (1959).

### IV

■ We need not review the remaining claims of STK's counterclaim. Under Pennsylvania law, a duty to defend arises even if only one of a number of claims set forth in a pleading is potentially covered. *American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir.1985). At least two counts of STK's counterclaim are encompassed within the language of the Hartford policy. Accordingly, Hartford's motion for judgment on the pleadings will be denied.[5]

---

3. STK's principal place of business is in Colorado.

4. Whether personal or advertising injury applies depends upon whether the disparagement occurred in the course of advertising.

5. In its brief, Hartford raises the issue that Bell Atlantic is not a named insured under the policy. However, Hartford did not move for judgment on the pleadings on that basis. That issue will have to wait until another day.