HARLEYSVILLE MUTUAL INSURANCE COMPANY, Plaintiff v. BUZZ OFF INSECT SHIELD, L.L.C., a North Carolina limited liability company, INTERNATIONAL GARMENT TECHNOLOGIES, L.L.C., a North Carolina limited liability company, ERIE INSURANCE EXCHANGE, ERIE INSURANCE COMPANY, Defendants

No. COA07-1002

(Filed 6 May 2008)

**1. Appeal and Error— appealability—interlocutory order—insurer's duty to defend—substantial right**

Although an appeal from a grant of partial summary judgment is generally an appeal from an interlocutory order, the issue of whether an insurer has a duty to defend the insured in the underlying action affects a substantial right and is immediately appealable.

**2. Insurance— liability insurers—duty to defend—comparison test**

Liability insurance carriers had a duty to defend IGT in an action against IGT for trademark infringement and false advertising because: (1) utilization of the comparison test revealed that the allegations disclosed a possibility that IGT was liable and that the carriers had a duty to defend IGT against the action since the allegations in the complaint claim that IGT made false, negative comparative statements about the pertinent goods in the course of its advertising; (2) the conduct giving rise to the cause of action occurred within the coverage dates of the carriers' policies; and (3) the allegations did not fall within the carriers' "Quality or Performance of Goods—Failure to Conform to Statements" exclusion.

Judge GEER dissenting.

Appeal by plaintiff and defendants Erie Insurance Exchange and Erie Insurance Company from judgments entered 24 May 2007 and 25

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

June 2007 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 7 February 2008.

> *Pinto, Coates, Kyre & Brown, P.L.L.C., by David L. Brown and John I. Malone, Jr., for plaintiff-appellant.*

> *Cozen O'Connor, by Michael A. Hamilton, Philadelphia, Pennsylvania, pro hac vice; and Burton & Sue, L.L.P., by Gary K. Sue, for defendant-appellants Erie Insurance Exchange and Erie Insurance Company.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mack Sperling and John S. Buford; and Latham & Watkins, L.L.P., by Cecilia O'Connell Miller, San Diego, California, pro hac vice, for defendant-appellees International Garment Technologies, L.L.C. and Buzz Off Insect Shield, L.L.C.*

TYSON, Judge.

Harleysville Mutual Insurance Company ("Harleysville") and Erie Insurance Exchange and Erie Insurance Company ("Erie") (collectively, "the Carriers") appeal from orders entered by the superior court, which: (1) granted International Garment Technologies, L.L.C.'s ("IGT") motion for partial summary judgment and granted in part and denied in part the Carriers' motions for partial summary judgment; and (2) denied the Carriers' motions to alter, amend, or vacate judgment. We affirm.

## I. Background

On 22 February 2005, S.C. Johnson & Son, Inc. ("S.C. Johnson"), filed a complaint in the United States District Court for the Northern District of Illinois and alleged claims against Buzz Off Insect Shield, L.L.C. ("BOIS") for: (1) trademark infringement; (2) false advertising; (3) unfair competition; (4) unjust enrichment; and (5) other related violations of Illinois state law. On 26 April 2005, BOIS and IGT filed a complaint in the United States District Court for the Middle District of North Carolina and sought a declaration: (1) of trademark rights and non-infringement; (2) that S.C. Johnson's claims are barred; (3) that BOIS and IGT have not engaged in false advertising; and (4) of no unjust enrichment. The Honorable P. Trevor Sharp of the United States District Court for the Middle District of North Carolina consolidated the two cases. S.C. Johnson amended its original complaint and added IGT as a defendant.

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[190 N.C. App. 28 (2008)]

On 18 May 2006, Harleysville filed a complaint in Guilford County Superior Court and sought a declaratory judgment that the policies of insurance issued by Harleysville to IGT do not provide coverage to BOIS or IGT for any of the claims or damages resulting from the allegations contained in the underlying lawsuit. In the alternative, Harleysville sought to have the superior court declare that Erie: (1) is afforded coverage to BOIS or IGT for the damages resulting from the allegations in the underlying lawsuit; (2) is required to defend BOIS and/or IGT in the underlying lawsuit; and (3) is obligated to pay any damages that BOIS and/or IGT may become legally obligated to pay as a result of the underlying lawsuit.

On 20 July 2006, IGT and BOIS answered Harleysville's complaint and IGT filed crossclaims and counterclaims against the Carriers that: (1) sought a declaratory judgment that the Carriers had a duty to defend IGT; (2) alleged the Carriers breached their duty to defend BOIS and IGT; and (3) alleged the Carriers breached their duty to defend in bad faith. On 9 August 2006, Erie answered Harleysville's complaint and filed crossclaims and a counterclaim asserting that it owed no duty to defend or indemnify BOIS and IGT with respect to the underlying action. In the alternative, Erie "request[ed] that the [superior] [c]ourt declare that Harleysville has an obligation to defend and indemnify BOIS and IGT for any costs they, or anyone on their behalf, incur in connection with the underlying lawsuit."

On 8 March 2007, IGT moved for "partial summary judgment as to its duty to defend and breach of duty to defend claims against [the Carriers]." On 24 May 2007, the superior court granted IGT's motion for partial summary judgment and "retain[ed] jurisdiction over any future determination regarding whether any disputed fee, expense, or costs incurred by IGT in its defense of the *S.C. Johnson* action is reasonable and/or otherwise incurred in the defense of IGT in the *S.C. Johnson* action." (Emphasis original). The superior court also found "that BOIS is not an 'insured' under the relevant Harleysville or Erie policies and that neither Harleysville nor Erie has a duty to defend or to indemnify BOIS regarding the *S.C. Johnson* action." (Emphasis original). BOIS did not appeal the superior court's judgment.

On 5 June 2007, the Carriers moved to alter, amend, or vacate the 24 May 2007 judgment. On 25 June 2007, the superior court filed its order, which denied the Carriers' motions to alter, amend, or vacate judgment. The Carriers appeal both the 24 May 2007 judgment and the 25 June 2007 denial of their motions to alter, amend, or vacate judgment.

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[190 N.C. App. 28 (2008)]

## II.  Interlocutory Appeal

[1] As a preliminary matter, we note that because the trial court granted partial summary judgment, the trial court's order did not dispose of the entire case and this appeal is interlocutory. *See Johnson v. Lucas*, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338 ("[T]he order granting partial summary judgment is interlocutory."), *aff'd*, 360 N.C. 53, 619 S.E.2d 502 (2005); *see also Ratchford v. C.C. Mangum, Inc.*, 150 N.C. App. 197, 199, 564 S.E.2d 245, 247 (2002) ("A final judgment is one that determines the entire controversy between the parties, leaving nothing to be decided in the trial court."). Our Supreme Court has stated:

> Generally, a party cannot immediately appeal from an interlocutory order unless failure to grant immediate review would affect[] a substantial right pursuant to N.C.G.S. sections 1-277 and 7A-27(d).

> A party may appeal an interlocutory order under two circumstances. First, the trial court may certify [pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2007)] that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. Second, a party may appeal an interlocutory order that affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment.

*Davis v. Davis*, 360 N.C. 518, 524-25, 631 S.E.2d 114, 119 (2006) (internal citations and quotations omitted).

In *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, this Court "conclude[d] that the order of partial summary judgment on the issue of whether [an insurer] has a duty to defend [the insured] in the underlying action affects a substantial right that might be lost absent immediate appeal." 137 N.C. App. 1, 4, 527 S.E.2d 328, 331 (2000). Based on this Court's holding in *Lambe Realty*, the trial court's order is immediately appealable. *Id.*

## III.  Issue

[2] The Carriers argue the superior court erred when it granted IGT's motion for partial summary judgment.

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[190 N.C. App. 28 (2008)]

### IV. Motion for Summary Judgment

The Carriers argue the superior court erred when it found the allegations in S.C. Johnson's complaint triggered the Carriers' duty to defend IGT. We disagree.

### A.  Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.

We review an order allowing summary judgment *de novo*. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.

*Wilkins v. Safran*, 185 N.C. App. 668, 672, 649 S.E.2d 658, 661 (2007) (internal citations and quotations omitted).

### B.  Analysis

### 1.  Covered Claim

Our Supreme Court has stated:

Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.

*Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) (citation omitted). "[A]llegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer." *Id.* at 691 n.2, 340 S.E.2d at 377 n.2. "[W]hen the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Id.* at 691, 340 S.E.2d at 377; *see also Roman Cath. Diocese of Springfield v. Maryland Cas. Co.*, 139 F.3d 561, 567 (7th Cir. 1998) ("The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action." (Quotation omitted)).

In order to determine whether the allegations as alleged by S.C. Johnson are covered by the provisions of IGT's liability insurance with the Carriers, the policy provisions must be analyzed and compared with the allegations. *Waste Management of Carolinas, Inc.*, 315 N.C. at 693, 340 S.E.2d at 378. "This is widely known as the 'comparison test': the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded. Any doubt as to coverage is to be resolved in favor of the insured." *Id.* (citation omitted).

Both of the Carriers' policies contained identical provisions and definitions:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking dam-

34 IN THE COURT OF APPEALS

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

ages for "personal and advertising injury" to which this insurance does not apply.

. . . .

SECTION V—DEFINITIONS

. . . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     . . . .

     d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

     . . . .

     g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

S.C. Johnson's complaint alleged BOIS and IGT made false advertising claims through the BOIS website and the websites and materials of the BOIS partners. S.C. Johnson also alleged that one such false advertising claim specifically named its OFF! Deep Woods® product. All other alleged false advertising S.C. Johnson complained of was directed toward the whole market of skin-applied insect repellents, a market in which S.C. Johnson asserts it is the "leading sell[er] . . . ."

The allegations contained in S.C. Johnson's complaint "disclose a . . . possibility that [IGT] is liable (and that the potential liability is covered) [and] suffice to impose a duty to defend upon the [Carriers]." *Id.* at 691 n.2, 340 S.E.2d at 377 n.2; *see also Winklevoss Consultants, Ins. v. Federal Ins. Co.*, 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998) (holding that because "[t]he [complaint filed by the plaintiff in the underlying action] . . . includes factual allegations that [the insured] made false negative comparative statements about [the underlying plaintiff's] goods, causing [the underlying plaintiff] to lose sales[] [i]t d[id] not matter that the[] allegations [made by the plaintiff in the underlying action] may not meet the technical requisites for stating a commercial disparagement claim.").

The Carriers have a duty to defend IGT against the S.C. Johnson action because the allegations in that complaint claim that IGT made

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

false, negative comparative statements about S.C. Johnson's goods in the course of its advertising. The Carriers have failed to show the trial court erred when it found the Carriers had a duty to defend.

## 2. Prior Publication Exclusion

Having determined that S.C. Johnson's complaint contained sufficient allegations to trigger the Carriers' duty to defend, we address whether the conduct giving rise to S.C. Johnson's cause of action occurred within the coverage dates of the Carriers' policies.

Again, both of the Carriers' policies contain identical provisions, which state:

2. Exclusions

This insurance does not apply to:

. . . .

c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

S.C. Johnson's complaint alleges the false advertising began in August of 2003. Erie's policy initially provided coverage from 25 April 2003 through 25 April 2004. The policy was renewed and later cancelled 4 July 2004. The false advertising is not alleged to have occurred prior to the beginning of Erie's policy period, and is alleged to have specifically occurred within the coverage and term dates of the policy. The superior court did not err when it found Erie incurred a duty to defend IGT.

Harleysville's policy provided coverage from 20 June 2004 though 20 June 2005. While S.C. Johnson's complaint alleged that the false advertising began in August 2003, it also alleged that new press releases on the BOIS website contained false advertising claims as late as 15 September 2004. The superior court did not err when it found Harleysville's policy incurred a duty to defend IGT.

## 3. Quality or Performance of Goods Exception

The dissenting opinion erroneously concludes that S.C. Johnson's allegations fall within the Carriers' "Quality Or Performance Of Goods—Failure To Conform To Statements" exclusion. Both of the Carriers' policies contain identical provisions, which state:

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

2. Exclusions

This insurance does not apply to:

. . . .

g. Quality Or Performance Of Goods—Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

The crux of S.C. Johnson's allegations assert that statements IGT made during the course of advertisements disparaged S.C. Johnson's products, and not that IGT's goods fail to conform with IGT's statements of quality or performance. S.C. Johnson's complaint alleges IGT made false, negative comparative statements about S.C. Johnson's goods and the whole market of skin-applied topical insect repellants in IGT's advertising. The allegations contained in S.C. Johnson's complaint do not fall within the "Quality Or Performance Of Goods—Failure To Conform To Statements" exclusion and the superior court did not err when it found the Carriers' policies imposed a duty to defend IGT.

## V. Conclusion

S.C. Johnson's complaint contains allegations asserting and giving rise to a possibility that IGT is liable and that IGT's potential liability is covered under the Carriers' policies. S.C. Johnson's complaint was sufficient to impose a duty to defend upon the Carriers. *Waste Management of Carolinas, Inc.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. The superior court did not err when it granted IGT's motion for partial summary judgment. The superior court's partial summary judgment order is affirmed.

Affirmed.

Judge STROUD concurs.

Judge GEER dissents by separate opinion.

GEER, Judge, dissenting.

While an insurer has a duty to defend whenever pleadings "disclose a mere possibility that the insured is liable (and that the poten-

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

tial liability is covered)," *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 n.2, 340 S.E.2d 374, 377 n.2 (1986), this obligation is not so expansive as to require defense based upon references in a complaint immaterial to that action. That is, however, precisely the result of the majority opinion's holding. When, as required by *Waste Management*, we consider the factual allegations of the S.C. Johnson & Son, Inc. ("S.C. Johnson") complaint providing the actual basis for imposing liability on defendants,[1] I believe, based on an exclusion contained in both of the policies at issue in this case, that "the facts are not even arguably covered by" the policies. *Id.* at 692, 340 S.E.2d at 378. I would, therefore, hold that Harleysville Mutual Insurance Company and Erie Insurance Company have no duty to defend, and I must respectfully dissent.

I find it unnecessary to address whether the allegations of the S.C. Johnson complaint constitute an "advertising injury" within the meaning of the policies because I believe the policies contain an exclusion that is, in any event, dispositive. The policies of Harleysville and Erie specifically provide that their insurance "does not apply to": " 'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.' "

S.C. Johnson's complaint asserted claims for trademark infringement and false advertising under state and federal law. IGT acknowledges that only the allegations relating to false advertising could trigger the duty to defend. At the beginning of the complaint, S.C. Johnson described its false advertising claims as alleging that BOIS and IGT had made "materially false and misleading advertising claims about the efficacy, use, and product attributes of BUZZ OFF Insect Repellent Apparel . . . ." In the allegations common to all claims, S.C. Johnson explained: "Because of the potential morbidity of the health problems caused by West Nile virus and other mosquito-borne diseases, any false or misleading claims about the efficacy of insect repellent or insect killing products could have serious public health consequences."

In the section of the complaint entitled "Allegations Relating to Defendants' False Advertising," S.C. Johnson first described "False Efficacy Claims on BOIS's Website." It alleged:

---

1. Buzz Off Insect Shield, LLC ("BOIS") and International Garment Technologies, LLC ("IGT").

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

90. BOIS's website . . . makes several claims that falsely and unambiguously communicate that (a) by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin, (b) BUZZ OFF Insect Repellent Apparel protects uncovered skin from mosquito bites, (c) if you wear BUZZ OFF Insect Repellent Apparel, you will not receive any mosquito bites, and (d) BUZZ OFF Insect Repellent Apparel is equivalent to or superior in performance to topical insect repellents, such as those containing DEET. The BOIS website reinforces these claims by emphasizing the "hassle" of applying "messy" insect-repellent products directly to the skin.

S.C. Johnson then quoted examples of various assertions on the BOIS website that supported this allegation.

S.C. Johnson next alleged that similar claims were made on the websites of companies partnering with BOIS:

92. These websites falsely and unambiguously communicate that (a) by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin, (b) BUZZ OFF Insect Repellent Apparel protects uncovered skin from mosquito bites, (c) if you wear BUZZ OFF Insect Repellent Apparel, you will not receive any mosquito bites, and (d) BUZZ OFF Insect Repellent is equivalent to or superior in performance to topical insect repellents, such as those containing DEET. The BOIS Partner websites reinforce these claims by emphasizing the "hassle" of applying "messy" insect-repellent products directly to the skin.

The complaint again quoted examples from the BOIS partners' websites that supported this allegation. The complaint similarly alleged, with quoted examples, that BOIS partners' catalog and print advertisements "falsely and unambiguously communicate that, by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin and that BUZZ OFF apparel protects uncovered skin."

S.C. Johnson also alleged that BOIS and its partners made the false and misleading claim (1) "that BUZZ OFF Insect Repellent Apparel is highly effective through 25 washings" and (2) "that BUZZ OFF Insect Repellent Apparel contains a version of a natural insecticide that is derived from chrysanthemum flowers" causing customers to be deceived "into believing that BUZZ OFF Insect Repellent

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

Apparel, or its active ingredient, is a natural product rather than a synthetic chemical, when it in fact is the latter." After quoting examples of these claims, S.C. Johnson explained that BOIS was falsely communicating "to consumers that BUZZ OFF Insect Repellent Apparel is a more natural option than traditional insect-repellent products, like those marketed under SC Johnson's OFF! brand, which contain chemical repellents, such as DEET. This claim also falsely communicates that BUZZ OFF Insect Repellent Apparel and/or the active ingredient in the apparel is made from chrysanthemums or is natural." S.C. Johnson then continued:

113. The claim exploits the desire of consumers for natural products, including insect repellents. Consumers who rely on such misleading and deceptive statements are likely to use BUZZ OFF Insect Repellent Apparel to the exclusion of DEET-containing products such as OFF!, despite the fact that BUZZ OFF Insect Repellent Apparel provides protection from mosquitoes that is clearly inferior to the protection provided by topical repellents containing DEET, and thus potentially endangers the user's health.

114. Consumers could also be encouraged by these false and misleading claims to ignore the safe storage and disposal instructions required by law to be disclosed on BUZZ OFF apparel.

The S.C. Johnson complaint concluded its false advertising allegations with a series of allegations under the heading of "The Falsity of the Claims on Websites and in the Print Advertising":

121. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements intentionally mislead, confuse and deceive consumers by communicating that (a) by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin, (b) BUZZ OFF Insect Repellent Apparel protects uncovered skin from mosquito bites, (c) if you wear BUZZ OFF Insect Repellent Apparel, you will not receive any mosquito bites, and (d) BUZZ OFF Insect Repellent Apparel is equivalent to or superior in performance to topical insect repellents, such as those containing DEET.

122. These claims are materially false and deceptive, and pose a significant health and safety risk to consumers because

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

wearing BUZZ OFF Insect Repellent Apparel does not reduce or eliminate the need to apply an insect-repellent product on the skin, BUZZ OFF Insect Repellent Apparel does not protect adjacent, uncovered and untreated skin from mosquito bites, BUZZ OFF Insect Repellent Apparel does not prevent consumers who wear it from receiving mosquito bites, and BUZZ OFF Insect Repellent Apparel is not equivalent to or superior in performance to topical insect repellents, such as those containing DEET.

123. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements also intentionally mislead, confuse and deceive consumers by communicating that BUZZ OFF Insect Repellent Apparel is effective through 25 washings.

124. This claim is materially false and deceptive, and poses a significant health and safety risk to consumers because BUZZ OFF Insect Repellent Apparel does not prevent mosquito bites on covered skin through 25 washings.

125. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements also intentionally mislead, confuse and deceive consumers by communicating that the active ingredient in BUZZ OFF Insect Repellent Apparel is made from chrysanthemum flowers and/or contains a version of a natural insect repellent that is derived from chrysanthemum flowers and/or is a more natural option than traditional repellants such as SC Johnson's OFF! Brand, which contain the chemical DEET.

126. These claims are materially false and deceptive because the active ingredient in BUZZ OFF Insect Repellent Apparel is a synthetic chemical that is not derived from chrysanthemum flowers nor does it contain a version of a natural insect repellent that is derived from chrysanthemum flowers, nor is it a more natural option than topical repellents containing DEET.

The complaint contains no other allegations regarding BOIS' and IGT's advertising.

IGT argues that S.C. Johnson's allegations constitute "advertising injury," as defined by the policies, because those allegations essentially assert that BOIS and IGT disparaged S.C. Johnson's products by

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

making false comparisons between the BOIS/IGT products and S.C. Johnson's products. When, however, it comes time to consider the applicability of the failure to conform exclusion, IGT overlooks the fact that S.C. Johnson contended that the comparisons were false and misleading *because BOIS and IGT were making false assertions about the BOIS/IGT products*. Review of S.C. Johnson's actual allegations reveals no contention by S.C. Johnson that BOIS and IGT were making false statements about S.C. Johnson's products, contrary to the assertion otherwise in the majority opinion.

S.C. Johnson alleged in its complaint that BOIS and IGT were falsely asserting that their apparel protected uncovered skin, eliminated the need for topical insect repellents, resulted in no mosquito bites, was effective for 25 washings, and was a natural product. S.C. Johnson also expressed concern that these false claims of the efficacy of BOIS/IGT products could create a public health hazard. These allegations all relate to the quality and performance of BOIS/IGT apparel. I cannot see how these allegations can be viewed as anything other than a claim that S.C. Johnson was injured by "the failure of [BOIS/IGT] goods, products or services to conform with any statement of quality or performance made in [BOIS/IGT's] 'advertisement.' " The allegations thus fall squarely within the exclusion in the carriers' policies for non-conforming products.

I note that IGT asserts generally that the S.C. Johnson complaint "references multiple allegedly false and disparaging statements regarding S.C. Johnson products and topical repellents (which IGT does not manufacture)," but does not cite specifically to the complaint, choosing instead to refer back to another section of its brief. In that other section—discussing "advertising injury"—IGT primarily relies upon S.C. Johnson's quotations of actual advertisements following each of the above allegations.[2] Even if those quoted advertisements could be viewed by someone as making false statements about S.C. Johnson's products, the fact remains that S.C. Johnson did not make that claim. Its lawsuit was based on its contention that BOIS and IGT were making false claims about the quality and performance of BOIS/IGT's products. These false claims in turn made it seem like BOIS/IGT's products were superior to and eliminated the need for S.C. Johnson's products. No actual allegations of S.C. Johnson's complaint suggested that S.C. Johnson was asserting

---

2. With respect to IGT's citation to the complaint's allegations, as opposed to supporting quotations, I do not agree that they include false and disparaging statements about S.C. Johnson products and topical repellants.

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

any injury from false claims by BOIS and IGT regarding S.C. Johnson's products.

I know of no authority that imposes a duty to defend a lawsuit simply because the plaintiff in that lawsuit could have relied upon certain facts as a basis for recovery, but chose not to do so. *See Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223 (4th Cir. 2003) (refusing to conclude that underlying complaints alleged claim of product disparagement when, even though the insured's marketing of its motor vehicles "could possibly be seen as a form of deceit underlying false advertising, the complaint does not allege false advertising but rather trademark infringement, trade dress infringement, trademark dilution, and related unfair competition"); *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1033 (N.D. Ill. 1998) (in determining whether a duty to defend existed, noting "[a]lthough we must construe the [underlying] complaint liberally in favor of [the insured], we cannot read into it words or claims that do not appear"). Plaintiffs not infrequently include in complaints background material providing a context for a dispute or other allegations extraneous to the merits of the dispute. If those allegations are not relied upon as a basis for recovery, I do not see how they can trigger a duty to defend when there is no potential for liability based on those immaterial allegations.

Our Supreme Court stated in *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377 (emphasis added): "When the pleadings state facts demonstrating that *the alleged injury is covered by the policy*, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Here, S.C. Johnson's complaint alleged an injury because BOIS and IGT's advertising made false claims about the quality and performance of BOIS/IGT's products. Given the exclusions of the policies, that injury is "not even arguably covered by the polic[ies]," and, therefore, the carriers had no duty to defend. *Id.* at 692, 340 S.E.2d at 378.

Significantly, of the cases relied upon by IGT in contending that the complaint alleges "advertising injury" when it contends that the defendant made false comparisons, only two involved policies containing a similar exclusion to the one at issue in this case. The published decision of *DecisionOne Corp. v. ITT Hartford Ins. Group*, 942 F. Supp. 1038, 1043 (E.D. Pa. 1996), rejected the carrier's claim that the allegations by the plaintiff in the underlying action fell within the exclusion for failure of the goods or services of the defendant

IN THE COURT OF APPEALS                    43

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[190 N.C. App. 28 (2008)]

insured to conform with the quality or performance advertised by that defendant. As the district court stressed, however, "[the plaintiff] *was not claiming that [the defendant's] quality did not rise to the level advertised.* It was claiming that [the defendant] made misleading and false comparisons with [the plaintiff's] products and services." *Id.* (emphasis added). In the unpublished opinion, *PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, 1997 WL 800874, *3 (W.D.N.Y. Dec. 31, 1997), the district court concluded that the exclusion "arguably applies to the fourth counterclaim to the extent that it alleges that [the defendant's] advertisement misrepresented the nature, characteristics and qualities of [the defendant's] products, but it is wholly inapplicable to the counterclaim's allegation that the advertisement was equally misleading with respect to [the plaintiff's] products."

In contrast, in this case, according to S.C. Johnson's complaint, any falseness in the comparison of products arose not out of misstatements in BOIS and IGT's advertising about S.C. Johnson's products, but rather solely because the quality and performance of BOIS/IGT products was not as advertised. It thus more closely resembles *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242 (2d Cir. 2002).

In *R.C. Bigelow*, Celestial Seasonings, Inc. had sued the Bigelow tea company for a variety of claims, including false advertising based on Celestial's claim that Bigelow failed to disclose that its teas were artificially flavored and in promoting its teas "convey[ed] the false and misleading impression that those herbal teas were all natural." *Id.* at 244. As in this case, the insurance policy at issue excluded claims based on " '[t]he failure of goods, products or services to conform with advertised quality or performance[.]' " *Id.* at 245. The Second Circuit concluded that the false advertising allegations "did not trigger a duty to defend under the advertising injury provision because they concerned allegedly false claims about *Bigelow's* products, and such false claims about the insured products are explicitly excluded by the policy." *Id.* at 246. *See also Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F. Supp. 2d 587, 598 (E.D. Va. 2002) (holding that false advertising allegations in underlying complaint that insured made false statements suggesting that the vehicles it produced were equivalent to the vehicles that the plaintiff produced fell within exclusion for failure of products to conform with advertised quality or performance), *aff'd on other grounds*, 332 F.3d 215 (4th Cir. 2003).

Like the Second Circuit in *R.C. Bigelow,* I would conclude in this case that S.C. Johnson's allegations did not trigger a duty to defend under the advertising injury coverage because those allegations only asserted that BOIS and IGT had made false assertions about their own products—claims expressly excluded from coverage by the policies. *See Waste Mgmt.,* 315 N.C. at 700, 340 S.E.2d at 383 (holding that no obligation to defend arose when the allegations of the pleadings, as supported by a deposition, "fit squarely within the language of the exclusion clause"). As this Court has phrased the test set forth in *Waste Management,* "if the pleadings allege any facts which disclose a possibility that the insured's potential liability is covered under the policy, then the insurer has a duty to defend." *Wilkins v. Am. Motorists Ins. Co.,* 97 N.C. App. 266, 269, 388 S.E.2d 191, 193, *disc. review denied,* 327 N.C. 145, 394 S.E.2d 189 (1990). In this case, there is no possibility that the "potential liability," as alleged by S.C. Johnson in its complaint, is covered by the carriers' policies. I would, therefore, reverse the decision below.